McCormack, J.
**700 *759 The defendants, the Ann Arbor and Clio school districts, each have a policy banning firearms on school property. The plaintiffs, advocacy organizations supporting gun ownership and certain parents of children who attend school in the defendant districts, believe state law preempts these policies by implication. While the Legislature plainly can preempt school districts from adopting policies like the ones at **701 issue if it chooses to, it has not done so here: not only has our Legislature not preempted school districts' regulation of guns by implication, it has expressed its intent not to preempt such regulation. We therefore affirm the Court of Appeals.
I. FACTS AND PROCEDURAL HISTORY
The defendant school districts adopted policies prohibiting firearms on school property. Each policy contains an exception for individuals with a concealed pistol license (CPL). To be clear, in practice this means CPL holders can carry a concealed weapon on school property under certain limited conditions, but they cannot openly carry one.[1]
The plaintiffs filed these lawsuits, seeking a determination that state law preempts by implication the school districts' policies limiting firearms on school grounds. Each district moved for summary disposition. The plaintiffs filed cross-motions for summary disposition or for declaratory relief.
In the Ann Arbor case, the Washtenaw Circuit Court granted the defendants' motion for summary disposition and denied the plaintiffs' motion for summary disposition. In the Clio case, the Genesee Circuit Court denied the defendants' motion for summary disposition and granted declaratory relief to the plaintiffs. In published opinions issued the same day and by the same panel, the Court of Appeals affirmed the Washtenaw Circuit Court and reversed the Genesee Circuit Court. The Court of Appeals held that the districts' policies are not field-preempted, applying the analysis from our decision **702 in People v. Llewellyn , 401 Mich. 314, 257 N.W.2d 902 (1977), and that the policies are not conflict-preempted because they do not conflict with any statute.
The plaintiffs appealed, arguing that the school districts are prohibited from adopting policies banning firearms (beyond those permitted by the concealed-weapon licensing exception) because the state has occupied the field of firearms regulation and that the Court of Appeals' decisions in these cases conflict with its opinion in Capital Area Dist. Library v. Mich. Open Carry, Inc. , 298 Mich. App. 220, 826 N.W.2d 736 (2012) ( CADL ). We directed oral argument on the application in each case and ordered that they be argued and submitted together and directed the parties to brief:
(1) whether, in light of MCL 123.1102, it is necessary to consider the factors set forth in People v. Llewellyn , 401 Mich. 314 [257 N.W.2d 902] (1977), in order to determine whether the school district's policies are preempted; (2) if so, whether the Court of Appeals properly analyzed the Llewellyn factors; and (3) whether *760 the Court of Appeals correctly held that the school district's policies are not preempted. [ 501 Mich. 941, 904 N.W.2d 424 (2017).]
II. ANALYSIS
Whether the state has preempted a local regulation, which the state can do expressly or by implication-and in that latter case either because the local regulation directly conflicts with state law or because the state has occupied the entire field of regulation in a certain area-is a question of statutory interpretation that we review de novo. Detroit v. Ambassador Bridge Co. , 481 Mich. 29, 35, 748 N.W.2d 221 (2008) ; Ter Beek v. City of Wyoming , 495 Mich. 1, 8, 846 N.W.2d 531 (2014). That means that we review it independently, with no required deference to the trial court. Millar v. Constr. Code Auth. , 501 Mich. 233, 237, 912 N.W.2d 521 (2018).
**703 The plaintiffs argue that the school districts' policies are preempted by implication. For good reason: There is no indication that any statute preempts the policies expressly. Accordingly, the sole argument in the plaintiffs' applications for leave to appeal in this Court, and their primary argument in their supplemental briefing, is that the districts' policies are field-preempted under our decision in Llewellyn . Field preemption applies if "the state statutory scheme pre-empts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation." Llewellyn , 401 Mich. at 322, 257 N.W.2d 902. Conflict preemption, by contrast, applies instead if "the ordinance is in direct conflict with the state statutory scheme," id ., such that conformity with both is not possible. The plaintiffs did not advance a conflict-preemption argument in their applications or at oral argument.
A. EXPRESS PREEMPTION
Under Llewellyn , a court begins the preemption analysis by determining whether state law "expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive...." Id . at 323, 257 N.W.2d 902. As noted, there is no dispute that state law does not expressly preempt school districts' authority to regulate guns. Under MCL 123.1102, "[a] local unit of government shall not ... enact or enforce any ordinance or regulation pertaining to, or regulate in any other manner the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols [or] other firearms ... except as otherwise provided by federal law or a law of this state." MCL 123.1101(b) then defines "local unit of government" in the act to **704 mean "a city, village, township, or county." In other words, while MCL 123.1102 expressly preempts regulation of firearms by a city, village, township, or county, it does not apply to school districts, which are left out of the Legislature's list.[2] *761 B. IMPLIED PREEMPTION
1. FIELD PREEMPTION
The schools districts' policies are also not impliedly field-preempted. Courts are to consider these factors in determining whether the Legislature has impliedly occupied the field so as to preclude local regulation in a certain area:
[P]reemption of a field of regulation may be implied upon an examination of legislative history. Walsh v. River Rouge , 385 Mich. 623, 189 N.W.2d 318 (1971).
**705 [T]he pervasiveness of the state regulatory scheme may support a finding of preemption. Grand Haven v. Grocer's Cooperative Dairy Co. , 330 Mich. 694, 702, 48 N.W.2d 362 (1951) ; In re Lane , 58 Cal. 2d 99, 22 Cal.Rptr. 857, 372 P.2d 897 (1962) ; Montgomery County Council v. Montgomery Ass'n, Inc. , 274 Md. 52, 333 A.2d 596 (1975). While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.
[T]he nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest. [ Llewellyn , 401 Mich. at 323-324, 257 N.W.2d 902.]
The Court of Appeals analyzed these factors and determined that the policies were not field-preempted. But the school districts believe this step isn't needed. They contend that we should consider the exclusion of school districts from MCL 123.1101(b) as a definitive expression of the Legislature's intent not to occupy the field. They cite Judge GLEICHER 's partial dissenting opinion in CADL , 298 Mich. App. at 241-251, 826 N.W.2d 736 (advocating this approach). We agree.
In Llewellyn , no statute expressly stated the Legislature's intent to preempt local obscenity regulation, but we found that the state's comprehensive coverage of the field impliedly revealed the Legislature's intent to occupy the field. Llewellyn therefore addressed a different question than the one presented here. Here, an unambiguous statute shows a legislative intent not to occupy the field.
Requiring courts to turn to the Llewellyn factors to consider field preemption even when an unambiguous statute establishes legislative intent to regulate the subject matter only partially would be an internally contradictory exercise and contrary to this Court's **706 general rules of statutory interpretation.[3] The Legislature's *762 partial list of local units of government that may not regulate firearms answers, definitively, the field-preemption question. "Where the language of the statute is unambiguous, the plain meaning reflects the Legislature's intent and this Court applies the statute as written.... Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to determine legislative intent." People v. Borchard-Ruhland , 460 Mich. 278, 284, 597 N.W.2d 1 (1999).[4] These principles apply with equal force to preemption questions. Morales v. Trans World Airlines, Inc. , 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) ("The question [of preemption], at bottom, is one of statutory intent, and we accordingly ' "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." ' ") (citations omitted). **707 A reasonable application of the expressio unius est exclusio alterius doctrine gets to the same answer: " 'the expression of one thing suggests the exclusion of all others.' " People v. Wilson , 500 Mich. 521, 526, 902 N.W.2d 378 (2017). Enactment of an express-preemption statute limited to specific local units of government implies that entities not included are not preempted. Cipollone v. Liggett Group, Inc. , 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) ("Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not pre-empted."); id . at 547, 112 S.Ct. 2608 (Scalia, J., concurring in part and dissenting in part) ("Once there is an express pre-emption provision, in other words, all doctrines of implied pre-emption are eliminated.... The existence of an express pre-emption provision tends to contradict any inference that Congress intended to occupy a field broader than the statute's express language defines.").
Thus, when a statute expressly states the Legislature's desire to preempt or not preempt a field, the statute controls and resort to the remaining Llewellyn factors is unnecessary. In this case, because MCL 123.1102 and MCL 123.1101 show the Legislature's intent to preempt some local units of government from regulation but not others, that intent controls.[5] Because those statutes exclude school districts from an otherwise precise list of local units of government prohibited from regulating firearms, the districts' policies are not field-preempted. To the extent that **708 Mich. Coalition for Responsible Gun Owners v. City of Ferndale , 256 Mich. App. 401, 414, 662 N.W.2d 864 (2003), cited MCL 123.1102 as supporting the proposition that "state law completely occupies the field of [firearms] regulation," we overrule it. *763 2. IMPLIED CONFLICT PREEMPTION[6]
In a secondary argument advanced only in their supplemental briefs, the plaintiffs and their supporting amicus contend that the districts' policies conflict with various statutes, particularly MCL 28.425o and MCL 750.237a, which they read as implying a state-law right to openly carry firearms on school property.[7] We decline to reach this argument because we conclude **709 that the plaintiffs abandoned it by failing to assert it in their applications for leave to appeal. Michigan Gun Owners' Application for Leave to Appeal, p. 7 (stating the sole question presented as "whether a school district is impliedly/field preempted from promulgating firearm rules or regulations"); Michigan Open Carry's Application for Leave to Appeal, p. vi (same); Michigan Gun Owners' Application, p. 20 (asserting that "[a]ppellants acknowledge that the [Ann Arbor Public Schools] policy does not directly contradict with the state statutory scheme"); Michigan Open Carry's Application, p. 12 (stating that "Michigan Open Carry, Inc. does not claim that the school's firearm regulation is statutorily preempted"). See Mitcham v. Detroit , 355 Mich. 182, 203, 94 N.W.2d 388 (1959) (stating that "[f]ailure to brief a question on appeal is tantamount to abandoning it").
And the plaintiffs were perfectly clear at oral argument that they were not advancing a conflict-preemption argument. When asked to elaborate on this separate preemption theory, counsel for both of the plaintiffs balked except to offer a belated attempt to brief the issue.[8] "In our adversary *764 system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, **710 we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Greenlaw v. United States , 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008). The plaintiffs decided not to present this issue, and so we decline to reach it.[9] **711 III. CONCLUSION
These are straightforward cases. The Legislature has, expressly, restricted some but not all local governments from regulating firearms. Schools in particular are not on the preempted list, quite possibly for reasons not difficult to imagine. In any case, the clarity of the statute that we are bound to respect is entirely inconsistent with the notion that the Legislature plainly intended to occupy the field here. Of course, if the Legislature in its wisdom sees fit to allow open firearms on all school grounds, no matter what local school districts may variously desire, it can say so.
Richard H. Bernstein
Elizabeth T. Clement
Viviano, J. (concurring ).
I concur fully in the majority opinion. I write, however, to explain why I disagree with the dissent, which concludes that the defendant schools lacked authority to issue the policies here because of a purported conflict with state law. The dissent's reasoning is flawed-its conclusion is premised on a misreading of our statutes and a misunderstanding of our conflict-preemption doctrine.[1]
*765 Before addressing the precise issue at the heart of the dissent's analysis, it is well to remember what this case is not about. No party has raised a constitutional challenge to the school policies at issue. And no justice believes that the Legislature has expressly preempted the school districts' policies or impliedly occupied the **712 field of firearms regulation.[2] The issue raised by the dissent is a narrow one: whether the school policies directly conflict with a state law and are therefore preempted by it.
In order for a state law to conflict with and preempt a local regulation, the state law must expressly permit something the local regulation prohibits:
It has been held that in determining whether the provisions of a municipal ordinance conflict with a statute covering the same subject, the test is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits. Accordingly, it has often been held that a municipality cannot lawfully forbid what the legislature has expressly licensed, authorized, permitted, or required, or authorize what the legislature has expressly forbidden.
* * *
The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two ... both will stand. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirement for all cases to its own prescription. Thus, where both an ordinance and a statute are prohibitory, and the only difference between them is that the ordinance goes further in its prohibition but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions **713 of the statute and the ordinance because of which they cannot coexist and be effective. Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not deemed inconsistent because of mere lack of uniformity in detail.[3 ]
Our caselaw thus stands for the proposition that "what the State law expressly permits an ordinance may not prohibit."[4]
The dissent posits that two statutory provisions, MCL 750.237a(5)(c) and 28.425o(1)(a), when read together, give concealed pistol license (CPL) holders the right to openly carry a firearm on school property. Because a school's power to provide for the safety of its students is subject to state law,[5] including these provisions, the dissent concludes that the schools have no authority to ban the open carrying of firearms by CPL holders. Under this reasoning, state law permits what the policies *766 prohibit, and thus it preempts those policies.
The dissent misreads our statutes. In order to determine what rights a person has by virtue of holding a CPL, the appropriate place to begin our analysis is the act that was intended to, among other things, "prescribe the rights and responsibilities of individuals who have obtained a license to carry a concealed pistol." MCL 28.421a. A few sections later, in MCL 28.425c(3), the Legislature describes the conduct authorized by a CPL, stating as follows:
**714 Subject to [ MCL 28.425o ] and except as otherwise provided by law, a license to carry a concealed pistol issued by the county clerk authorizes the licensee to do all of the following:
(a) Carry a pistol concealed on or about his or her person anywhere in this state.
(b) Carry a pistol in a vehicle, whether concealed or not concealed, anywhere in this state.
This provision, by itself, opens a gaping hole in the dissent's theory that, by virtue of their status as licensees, CPL holders have the right to openly carry a firearm on school property. Leaving aside, for the moment, its limiting language, this section authorizes a CPL holder to carry a concealed pistol on or about her person anywhere in the state; but it only authorizes the open carrying of a pistol (i.e., "whether concealed or not concealed") if it is done in a vehicle. Under well-established interpretative principles, by expressly authorizing a licensee to openly carry a pistol in a vehicle, the statute cannot be read as authorizing a right to openly carry a pistol more broadly.[6]
**715 *767 Not finding such a right in the place where one might expect it to be (at least, if one accepts the dissent's theory that the right to openly carry a firearm on school property is somehow connected to a person's status as a CPL holder), the dissent looks instead to the Michigan Penal Code as the source of a CPL holder's rights in this regard. In particular, the dissent places great emphasis on MCL 750.237a, which makes it a crime for a person to possess a weapon in a weapon-free school zone unless that person is a CPL holder.[7] However, despite the **716 dissent's protestations, an express right to openly carry a firearm on school property cannot be found in this criminal statute, either.
MCL 750.237a must be read in pari materia with MCL 28.425o(1)(a),[8] which provides that, except in narrow circumstances, a CPL holder may not carry a concealed pistol on school property. By its terms, MCL 28.425o(1)(a) pertains only to CPL holders and provides limitations on where they may carry a concealed pistol unless an exemption applies.[9] Unlike MCL 28.425c, MCL 28.425o does not authorize any conduct and makes no reference to unconcealed or open carrying of pistols or any other type of weapon. Thus, it is rather unremarkable that MCL 28.425o does "not **717 prohibit[ ] [a CPL holder] from possessing an openly carried firearm on school property."[10] This omission can hardly be viewed as "expressly permitting" a CPL holder to carry a firearm on school property, for purposes of a conflict-preemption analysis.[11] *768 The most reasonable way to interpret these provisions is that the exemption from criminal liability in MCL 750.237a(5)(c) only applies to the extent that a CPL holder complies with MCL 28.425c(3) and MCL 28.425o(1)(a).[12] In other words, the exemption is subject to the statutes that govern CPL holders and does not extend to conduct not authorized by the CPL statutes, such as openly carrying firearms on school property. MCL 750.237a proscribes conduct-it does not provide any affirmative rights whatsoever to CPL holders or anyone else. And it certainly does not grant broader rights to a CPL holder than the CPL statutes themselves.[13] **718 Even if, despite the foregoing, these statutes could somehow be read as expressly exempting the open carrying of firearms by CPL holders from the criminal prohibition in MCL 750.237a, the dissent's theory has already been rejected by our Court in Detroit v. Qualls . In that case, we addressed a criminal statute that prohibited the storage of fireworks in certain places and amounts, but expressly exempted certain retailers from the limitations.[14] The municipality, however, promulgated an ordinance preventing all retailers from storing more than 100 pounds of fireworks.[15] In this Court, the dissent concluded that the statute, by exempting retailers from the storage limitations, permitted the defendant retailer to store fireworks in excess of the limitations-thus, the ordinance's imposition of a storage limitation was preempted and invalid.[16] The majority disagreed with the conclusion "that the state [statute] impliedly permits what it does not prohibit,"[17] or, put differently, we "reject[ed] the rationale ... that that which the Legislature does not prohibit, it impliedly permits...."[18] Instead, we found no conflict between the statute and the ordinance.[19] Thus, despite **719 an express *769 exemption from criminal liability under a state statute, we found no conflict between that statute and a local ordinance prohibiting the exempted conduct.[20]
We also rejected the dissent's reasoning in Miller v. Fabius Twp. In that case, a state statute banned boats pulling water-skiers during the period of "1 hour after sunset to 1 hour prior to sunrise."[21] A local ordinance went further than the statute, banning waterskiing from 4:00 p.m. until 10:00 a.m. the following day.[22] The **720 dissent, employing the same reasoning as the dissent here, read the statute to permit waterskiing during the hours that it was not prohibited, and thus believed the ordinance conflicted with the statute.[23] In rejecting the plaintiff's argument that the ordinance was void because it exceeded the powers granted by the act, we held that the dissent's position was "based on the erroneous assumption that the legislature, in making it unlawful to water ski from 1 hour after sundown to 1 hour before sunrise, was expressing a lawful right to water ski without regulation during the other hours of the day."[24] We could discern no such intent from our review of the statute, and consequently we concluded that the ordinance and the statute did not conflict.[25] In other words, the statute's failure to prohibit conduct did not mean that the conduct was expressly permitted for purposes of a conflict-preemption analysis.
The dissent relies on Builders Ass'n v. Detroit[26] to suggest that our conflict-preemption jurisprudence is broader than it truly is. In that case, the Legislature had made it unlawful to conduct business on *770 Sunday but had provided various express exceptions.[27] The ordinance also made the same conduct unlawful but did not allow any of the statutory exceptions.[28] Consequently, it sought to prohibit by criminal sanction what the Legislature had exempted from criminal sanction. We held that the statute and ordinance conflicted.[29] But that is not the case here. The school policies do not **721 criminalize anything, and the Legislature has not expressly exempted open carrying on school property by CPL holders. In any event, we have more recently held that even express exemptions are not enough to create a conflict.[30]
The dissent also cites Nat'l Amusement Co. v. Johnson for support. In that case, the Legislature had enacted a statute regulating "endurance contests," making it unlawful to hold such contests " 'except in accordance with the provisions of this act.' "[31] A local ordinance purported to ban all such endurance contests.[32] We held that the ordinance was preempted.[33] The dissent reads this case to mean that "where the Legislature makes conduct unlawful unless certain conditions are satisfied, the Legislature has logically made the conduct lawful when those conditions have been satisfied."[34]
But the statutory scheme in Nat'l Amusement was materially different from the one at issue here. In Nat'l Amusement , the statute explicitly stated that it was " '[a]n act to regulate endurance contests,' " and it expressly provided that the contests could occur if certain conditions were met.[35] In other words, unlike the statutes in this case, the legislation in that case provided an affirmative right to engage in the conduct at issue and established the circumstances under which the conduct could be carried out. We called the legislation "regulatory, not prohibitory," and stated that "it would seem clear that the legislature intended **722 to permit continuance of the amusement, subject to statutory conditions."[36] That is not the case here. No one would say that either of the statutes cited by the dissent is designed to provide a framework to enable the open carrying of firearms on school property. The CPL statute makes absolutely no provision for such conduct,[37] and the criminal statute is "prohibitory," proscribing conduct rather than enabling it; moreover, even if the criminal statute affirmatively permits some form of carrying by CPL holders, it is concealed carrying, not open carrying.[38] Because no statute can be read to expressly permit the open carrying of firearms on school property, the policies here do not "attempt[ ] to prohibit what [a] statute permits."[39]
In sum, there is no conflict between the school policies and the relevant statutes because those statutes do not address the *771 open carrying of firearms, much less afford an express right to do so; and the policies merely bar individuals from carrying firearms on school property. Consequently, there is no conflict between the statutes and the policies.
Richard H. Bernstein
Clement, J. (concurring ).
I concur in full with the majority opinion. I write separately, however, to note that there is more agreement on this Court than may be apparent from the multitude of opinions in these cases. The majority opinion I join holds that the field of firearms regulation is not expressly preempted by MCL 123.1102 and that the field is not impliedly **723 preempted under our test from People v. Llewellyn , 401 Mich. 314, 257 N.W.2d 902 (1977). The partial dissent concurs with the majority "insofar as it concludes that the Legislature has not occupied the entire field of firearm regulation for preemption purposes." And the Chief Justice, in dissent, "do[es] not necessarily disagree with either of these specific conclusions...." Consequently, as to the Court's holding that the field of firearms regulation here is not preempted-either expressly, by MCL 123.1102, or impliedly under our Llewellyn test-no member of the Court has expressed any disagreement.
What actually divides the Court, then, is the Chief Justice's assertion that we must perform a "threshold inquiry of whether the school districts possessed the authority to adopt these policies in the first place"; in essence, that there is a conflict between the scope of the school districts' regulatory authority and the policies at issue. The Chief Justice concludes that school districts do not possess this authority. But he is the only member of the Court to express that opinion; the partial dissenters express no opinion on the matter, but would simply grant leave to appeal "so that we can further explore this important issue." I, too, express no opinion on the merits of the Chief Justice's argument in dissent; where I part ways with the remaining dissenting justices is that I agree with the majority that we should decline to advance this argument for the parties when they have not only not made it for themselves, but instead-in the words of the partial dissent-"improvidently ceded" this issue during oral argument. I agree with the majority that because plaintiffs expressly and unambiguously abandoned any argument that there is a conflict between the regulations at issue and the scope of the school districts' statutory authority, we should decline to reach **724 that argument now. I believe this is consistent with our concern for "judicial modesty" recently articulated in People v. Arnold , 502 Mich. 438, 481, 918 N.W.2d 164 (2018) (Docket No. 154764), 2018 WL 3483281, slip op. at 37, and the admonition that "appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them," Jefferson v. Upton , 560 U.S. 284, 301, 130 S.Ct. 2217, 176 L.Ed.2d 1032 (2010) (Scalia, J., dissenting) (quotation marks and citation omitted). Declining to reach an argument the parties themselves have not raised does nothing to prejudice our ability to take it up in the future, in a case in which the issue is properly presented.
Wilder, J. (concurring in part and dissenting in part ).
I concur with the majority opinion insofar as it concludes that the Legislature has not occupied the entire field of firearm regulation for preemption purposes. However, I respectfully dissent from the majority's decision not to reach the issue of conflict preemption. Even assuming arguendo *772 that plaintiffs abandoned this claim,[1] I would grant full leave so that we can further explore this important issue. **725 Like issue preservation, abandonment has always presented a prudential concern, not an inflexible rule. See Wortman v. R L Coolsaet Constr. Co. , 305 Mich. 176, 179, 9 N.W.2d 50 (1943) ("The right to amend a declaration after all proofs have been taken is a matter that rests in the sound discretion of the court."); MCR 7.305(H)(4) ("Unless otherwise ordered by the Court , an appeal shall be limited to the issues raised in the application for leave to appeal.") (emphasis added); see also MCR 7.316(A)(3) (stating that the Supreme Court can permit the grounds of an appeal to be amended).[2] Thus, rather than flat-out refusing to rule on the issue of conflict preemption, this Court should weigh the extent to which the issue is necessary to a full and proper determination of the applicable law, see Klooster v. City of Charlevoix , 488 Mich. 289, 310, 795 N.W.2d 578 (2011), against the risk that the parties involved will not provide the sort of adversarial tenacity that this Court relies on to adjudicate matters effectively. Cf. Castro v. United States , 540 U.S. 375, 386, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003) ("Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.") (Scalia, J., concurring in part).
In this case, prudence counsels in favor of granting leave on the issue of conflict preemption. Plaintiffs claim that they have a statutory right to carry firearms on school property under certain circumstances, while defendants seek to prevent that from happening. By **726 narrowly addressing only the issue of field preemption, the majority has not settled this statutory dispute. That is, in order to fully resolve the ultimate issue before us-whether state law preempts the respective school policies-it is necessary to determine whether those policies are in conflict with one or more statutes enacted by the Legislature. The majority has provided only partial guidance and left lingering doubts. A full grant with specific instructions to the parties that they address the issue of conflict preemption would resolve this uncertainty. There is also little chance that the parties will not give it their all if asked to brief and argue the issue of conflict preemption in greater depth. Having zealously advocated in the lower courts, both plaintiffs and defendants in these cases are clearly motivated to prevail.
Nor can I find any other concern counseling against a grant. There is no need *773 for further factual development, because the issue of conflict preemption presents a matter of pure statutory interpretation. See Packowski v. United Food & Commercial Workers Local 951 , 289 Mich. App. 132, 138, 796 N.W.2d 94 (2010). In other words, it is a question of law firmly within our wheelhouse and ripe to resolve. Cf. McNeil v. Charlevoix Co. , 484 Mich. 69, 81 n. 8, 772 N.W.2d 18 (2009) (noting that preservation requirements can be ignored if the issue presents a purely legal question and no further fact-finding is necessary). We should not shy away from tackling it, even if it presents a difficult question.
The conflict-preemption issue presented by these cases is one that will surely be relitigated; it is just a question of when. While I take rules regarding issue preservation and abandonment very seriously, believing them to be essential to the functioning of our adversarial system, see **727 Greenlaw v. United States , 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), on balance the equities favor waiving such requirements under these circumstances.
These cases present an important set of legal issues. And yet we have only heard them through arguments on the applications. In my view, that is insufficient. Accordingly, because I believe that this Court should grant the applications in these cases and direct the parties to brief the issue of conflict preemption, I respectfully dissent from the majority's decision to dismiss the issue as abandoned.
Brian K. Zahra
Markman, C.J. (dissenting ).
I respectfully dissent from this Court's affirmance of the judgments of the Court of Appeals. The majority concludes that MCL 123.1102 does not expressly preempt the school districts' policies and that the school districts' policies are not field-preempted. While I do not necessarily disagree with either of these specific conclusions, I do disagree with the majority's failure to address the threshold inquiry of whether the school districts possessed the authority to adopt these policies in the first place. Because MCL 380.11a(3) provides that school districts have the authority to enact school policies "except as otherwise provided" and because MCL 750.237a"otherwise provide[s]," I respectfully dissent. MCL 750.237a permits individuals licensed by this state to carry a concealed pistol (CPL holders) to openly carry firearms on school property while the school policies at issue here prohibit such conduct. Because school districts do not possess the authority to adopt policies that conflict with state law and the policies at issue here clearly conflict with state law, **728 these policies are plainly invalid. Accordingly, I would reverse the judgments of the Court of Appeals.
NOTE TO THE READER
I do not raise any novel theories in this opinion. Instead, I rely on the clear language and logic of the laws at issue. The School Code provides that school districts have the authority to enact policies that "provid[e] for the safety and welfare of pupils while at school ... except as otherwise provided by law...." MCL 380.11a(3)(b). And state law does "otherwise provide": first, by generally prohibiting the possession of firearms on school property, MCL 750.237a(4), and, second, by then expressly exempting CPL holders from this prohibition, MCL 750.237a(5)(c). That is, the second of these provisions necessarily permits CPL holders to possess firearms on school property. Yet the school districts here have attempted to prohibit this. Because they attempt to prohibit what state law permits, their policies *774 are void. It is that simple, and the opinion could end here. However, my position has not prevailed, and therefore I have written considerably more to explain my argument in greater detail and to respond to the majority and concurring opinions. But I do not want the reader to lose sight of the fact that my position is as direct and as uncomplicated as this note suggests.
ARGUMENT
The present issue, of course, is not whether CPL holders ought to be allowed to openly carry firearms on school property, but rather what is required by the laws of this state. Thus, it is the exercise of this Court's judgment, not its will, that is required. The Federalist No. 78 (Hamilton) (Rossiter ed., 1961), at 469. For the following reasons, I conclude that the representatives **729 of the people-those who serve in our Legislature-have clearly and straightforwardly denied school districts the authority to prohibit CPL holders from openly carrying firearms on school property, and this Court lacks the authority to second-guess the wisdom of that decision.
(1)"School districts, like townships and counties, are subdivisions of the State...." Van Wert v. Sch. Dist. No. 8 , 100 Mich. 332, 333, 58 N.W. 1119 (1894). "[S]chool districts possess such power as the statutes expressly or by reasonably necessary implication grant to them." Senghas v. L'Anse Creuse Pub. Sch. , 368 Mich. 557, 560, 118 N.W.2d 975 (1962) (emphasis omitted).
(2) The Revised School Code, MCL 380.1 et seq ., which is the only statute that defendants cite in support of their authority to enact the school policies at issue, provides, in pertinent part:
A general powers school district has all of the rights, powers, and duties expressly stated in this act; may exercise a power implied or incident to a power expressly stated in this act; and, except as otherwise provided by law , may exercise a power incidental or appropriate to the performance of a function related to operation of a public school and the provision of public education services in the interests of public elementary and secondary education in the school district, including, but not limited to, all of the following:
* * *
(b) Providing for the safety and welfare of pupils while at school or a school sponsored activity or while en route to or from school or a school sponsored activity. [ MCL 380.11a(3) (emphasis added).]
Accordingly, general powers school districts, such as defendants, may enact policies "providing for the **730 safety and welfare of pupils while at school" "except as otherwise provided by law." Id .
(3) The school policies at issue purport to "provid[e] for the safety and welfare of pupils while at school" by prohibiting even CPL holders from openly carrying firearms on school property. However, the school districts' authority to enact such policies is limited by the "except as otherwise provided by law" language of the Revised School Code. Therefore, the issue is whether a CPL holder's right to openly carry firearms on school property is "otherwise provided by law," and I conclude that it clearly is.
(4) Specifically, it is "otherwise provided by law" by MCL 750.237a, which first states that "[e]xcept as provided in subsection (5), an individual who possesses a weapon in a weapon free school zone is guilty of a misdemeanor," MCL 750.237a(4), and then sets forth an exception in MCL 750.237a(5)(c) that "[s]ubsection (4) does not apply to ... [a]n individual licensed by this state or another state to *775 carry a concealed weapon." Thus, MCL 750.237a permits an individual licensed to carry a concealed weapon to possess a firearm on school property.
(5) However, MCL 28.425o(1)(a) states that "an individual licensed under this act to carry a concealed pistol ... shall not carry a concealed pistol on the premises of ... [a] school or school property except that a parent or legal guardian of a student of the school is not precluded from carrying a concealed pistol while in a vehicle on school property, if he or she is dropping the student off at the school or picking up the student from the school." (Emphasis added.) As a result, when MCL 750.237a and MCL 28.425o are read together, it is clear that while a CPL holder is generally prohibited from possessing a concealed pistol on school property, he or **731 she is not prohibited from possessing an openly carried firearm on school property. Indeed, a CPL license expressly states, "This license allows the licensee to carry a pistol on or about his person anywhere in state, except a licensee shall not carry a concealed pistol [on] ... school property...." (Emphasis added.) See also Michigan State Police, Legal Update No. 86 (2010) < https://www.michigan.gov/documents/msp/MSP_Legal_Update_No._86_2_336854_7.pdf>, at 2-3 (accessed July 9, 2018) [https://perma.cc/5VLA-CUSR] ("[ MCL 28.425o ] applies to CPL holders carrying a concealed pistol. If the CPL holder is carrying a non-concealed pistol, the statute does not apply.... Therefore, a person with a valid CPL may carry a non-concealed pistol in the areas described in MCL 28.425o....").
(6) Thus, MCL 750.237a(5)(c) permits the open carry of firearms on school property by CPL holders. Because the Legislature has permitted by statute the open carry of firearms on school property by CPL holders, school districts cannot enact policies that conflict with that statute. Such policies fall within the "except as otherwise provided by law" qualification of MCL 380.11a(3). This reasoning is straightforward and requires nothing more than a traditional construction of two legal provisions, MCL 380.11a(3) and MCL 750.237a.
(7) Moreover, this reasoning is also consistent with that in cases such as Builders Ass'n v. Detroit , 295 Mich. 272, 294 N.W. 677 (1940), in which this Court held that when a criminal statute creates an exception to a penalty, this logically permits an individual to engage in the conduct that is the subject of the exception. In that case, the Legislature prohibited certain activity (conducting business on Sunday), but provided an exception to that prohibition (for those who observed **732 the Sabbath on Saturday). A Detroit ordinance, however, prohibited even those who observed the Sabbath on Saturday from conducting real estate business on Sunday. This Court held that the ordinance "attempts to prohibit that which the statute permits and is, therefore, void." Id . at 276, 294 N.W. 677 (emphasis added).
(8) In MCL 750.237a, by the same token, the Legislature has carved out an express exception (open carry of firearms on school property by CPL holders) from an express prohibition (no firearms on school property). By doing so, the Legislature has permitted the open carry of firearms on school property by CPL holders while the school policies prohibit such activity. Thus, these policies "attempt[ ] to prohibit that which the statute permits and [are], therefore, void." Builders Ass'n , 295 Mich. at 276, 294 N.W. 677.
(9) This reasoning is also consistent with that in cases such as Nat'l Amusement Co. v. Johnson , 270 Mich. 613, 259 N.W. 342 (1935), in which this Court held that where the Legislature makes conduct *776 unlawful unless certain conditions are satisfied, the Legislature has logically made the conduct lawful when those conditions have been satisfied. In that case, the Legislature made it unlawful to conduct walkathons unless certain conditions, such as physical examinations of the participants, were conducted. The Grand Rapids ordinance, however, made all walkathons unlawful. This Court held that the Grand Rapids ordinance "attempts to prohibit what the statute permits .... Therefore, the ordinance is void." Id . at 617, 259 N.W. 342 (emphasis added). See also id . ("[It is] clear that the legislature intended to permit continuance of [walkathons], subject to statutory conditions," because "[t]he statute makes it unlawful to conduct a walkathon only in violation of certain conditions" and "[t]his is merely a common **733 legislative manner of saying that it is lawful to conduct it if the regulations are observed.") (emphasis added).
(10) In MCL 750.237a, the Legislature has made it unlawful to openly carry firearms on school property unless certain conditions are satisfied, e.g., those set forth in MCL 750.237a(5)(c), namely, being "licensed by this state or another state to carry a concealed weapon." By doing so, the Legislature has permitted the open carry of firearms on school property by CPL holders. Yet, the school policies prohibit CPL holders from openly carrying firearms on school property. That is, the school policies "attempt[ ] to prohibit what the statute permits," and therefore, the school policies are void. Nat'l Amusement Co. , 270 Mich. at 617, 259 N.W. 342.
(11) That CPL holders are permitted to openly carry firearms on school property under MCL 750.237a(5)(c) is further reinforced by consideration of MCL 750.237a(5)(f). As with MCL 750.237a(5)(c), MCL 750.237a(5)(f) exempts certain conduct from the general prohibition of the possession of firearms on school property. Specifically, MCL 750.237a(5) provides:
Subsection (4) does not apply to any of the following:
* * *
(c) An individual licensed by this state or another state to carry a concealed weapon.
* * *
(f) An individual who is 18 years of age or older who is not a student at the school and who possesses a firearm on school property while transporting a student to or from the school if any of the following apply:
(i ) The individual is carrying an antique firearm, completely unloaded, in a wrapper or container in the trunk of **734 a vehicle while en route to or from a hunting or target shooting area or function involving the exhibition, demonstration or sale of antique firearms.
It is difficult to escape the conclusion that a person who engages in the conduct identified in MCL 750.237a(5)(f)(i ), such as a parent who has an unloaded antique shotgun locked in the trunk and is picking up his or her child from school after an antique gun show, simply cannot be excluded from school property. The Legislature could not have been more clear in providing that such conduct is permitted . Indeed, an amicus brief filed in support of the school district by the Negligence Section of the State Bar of Michigan acknowledges that a school district cannot exclude from school property those who fall within this protection. However, if a school cannot exclude persons who fall within the protections of MCL 750.237a(5)(f), there are no conceivable grounds for excluding persons who fall within the protections of MCL 750.237a(5)(c). The first principle of statutory interpretation establishes that subsections (5)(a), (5)(b), (5)(c), (5)(d), (5)(e), and (5)(f) each set forth conduct protected by *777 the Legislature that cannot be prohibited by school districts. If any one of these legislative exceptions, including (5)(c) (the CPL holders exception), can be nullified by schools, then any or all of the other exceptions can also be nullified.
(12) Furthermore, MCL 750.237a is more specific to the possession of weapons on school property by CPL holders than MCL 380.11a (or any other statute in the Revised School Code), so MCL 750.237a controls over MCL 380.11a for that reason as well. Ligons v. Crittenton Hosp. , 490 Mich. 61, 83-84, 803 N.W.2d 271 (2011) ("These specific statutes governing medical malpractice actions, which apply to the more narrow realm **735 of circumstances, prevail over the more general rules applicable to all civil actions.") (quotation marks and citation omitted).
For these reasons, I believe that Michigan law clearly permits the open carry of firearms on school property by CPL holders and that school districts cannot enact policies that conflict with that law. This is because school districts can only enact security policies "except as otherwise provided by law ," and MCL 750.237a(5)(c)"otherwise provide [s ] by law ." Therefore, I would reverse the judgments of the Court of Appeals.
RESPONSE TO MAJORITY
(1) The majority fails to address whether the school policies at issue here conflict with MCL 750.237a because this was a "secondary argument advanced only in [plaintiffs'] supplemental briefs[.]" Although plaintiffs may not have principally relied on this particular argument throughout these proceedings, all parties agree that the dispositive issue is whether the school district's policy is valid or void, i.e., whether schools can prohibit CPL holders from openly carrying firearms on school property. See, e.g., Michigan Gun Owners' Application for Leave to Appeal, p. 10 ("On April 27, 2015 ... Plaintiffs filed suit seeking a Declaratory Judgment in an effort to establish conclusively that the AAPS policy implementation was unlawful as it affects lawful firearm possession."); Michigan Open Carry's Application for Leave to Appeal, p. 3 ("On March 5, MOC and Mr. Herman brought their suit in the Genesee County Circuit Court for declaratory relief in an effort to conclusively establish that the CASD policy was unlawful as it interferes with lawful firearm possession."); Ann Arbor Public Schools' Answer, p. 4 ("The District's policies prohibiting the **736 possession of firearms on school property are permissible ... because the District has the authority to enact such policies...."); Clio Area Schools' Answer, p. v. ("Plaintiffs-open carry gun advocates-filed a lawsuit seeking a declaratory judgment that would allow them to openly carry guns in schools operated by the Clio Area School District.") See also, as an illustrative reportorial description of the case, Gershman, Michigan High Court Takes Up School Gun Ban , Wall Street Journal (April 11, 2018) < https://www.wsj.com/articles/michigan-high-court-takes-up-school-gun-ban-1523454482> (accessed July 9, 2018) [https://perma.cc/EXY3-F678] ("Michigan's highest court on Wednesday heard arguments on whether the right to openly carry firearms extends to school grounds.").
(2) Plaintiffs predominantly argue that the school districts' policies are void because they are preempted by state law via field preemption. I would instead hold that the school districts' policies are void because the districts do not have the authority to adopt a policy when a contrary policy is "otherwise provided by law," MCL 380.11a(3), and MCL 750.237a(5)(c)"otherwise provide[s] by law." In other words, plaintiffs argue in support of the right *778 result but predominantly rely on the wrong reasoning. This Court frequently affirms lower court decisions on exactly that basis, that they have "reached the right result for the wrong reason." See, e.g., People v. Brownridge , 459 Mich. 456, 462, 591 N.W.2d 26 (1999). Similarly, nothing precludes this Court from concluding that although plaintiffs predominantly relied on the wrong reasons, they consistently argued in support of the right result. It is of no consequence that plaintiffs have not consistently argued in support of any particular reasoning. We resolve cases and controversies; we do not sit in judgment of the work of attorneys. **737 (3) Plaintiffs have cited and called to the attention of this Court and the lower courts the two statutes I view as dispositive: MCL 380.11a(3) and MCL 750.237a. Given that I conclude it is unnecessary to look beyond these statutes, this opinion does nothing out of the ordinary in relying upon these statutes and reaching the conclusion, exclusively on the basis of these statutes, that the school districts' policies are clearly void.
(4) Moreover, even if the issue articulated here had been unpreserved (and it was not; it was only the precise argument that was purportedly unpreserved), it is well established that "this Court may review an unpreserved issue if it is one of law and the facts necessary for resolution of the issue have been presented[.]" McNeil v. Charlevoix Co. , 484 Mich. 69, 81 n. 8, 772 N.W.2d 18 (2009). The question whether the school districts possess the authority to adopt the policies at issue "presents an issue of statutory interpretation, which is a question of law for which the facts necessary for its resolution are sufficiently present to permit this Court's review." Id . See also People v. Temelkoski , 501 Mich. 960, 905 N.W.2d 593 (2018), decided earlier this year on the basis of what was an entirely unpreserved argument.
(5) That is, even if the precise issue had been unpreserved (and once again it was only the precise argument that was purportedly unpreserved), "the preservation requirement is not an inflexible rule; it yields to the necessity of considering additional issues when ' "necessary to a proper determination of a case...." ' " Klooster v. City of Charlevoix , 488 Mich. 289, 310, 795 N.W.2d 578 (2011) (citations omitted). See also People v. Rao , 491 Mich. 271, 289 n. 4, 815 N.W.2d 105 (2012) ("[W]hile an appellate court will not ordinarily review an issue that has been abandoned or waived, such review is allowed when it is 'necessary to **738 a proper determination of a case....' ") (citation omitted); Walters v. Nadell , 481 Mich. 377, 387, 751 N.W.2d 431 (2008) ("[T]his Court has [the] inherent power to review an issue not raised in the trial court to prevent a miscarriage of justice...."). And here, consideration of the school districts' authority under the Revised School Code to adopt the policies in dispute is indeed "necessary to a proper determination" of this case. It is a serious "miscarriage of justice" for this Court to hold that the school districts' policies are valid, and allow that opinion to inform the rights of nearly 600 school districts and more than 600,000 CPL holders throughout this state, as well as to have that opinion define the law for the 10 million people of Michigan, when the majority opinion does not even consider the dispositive statutes. Even more fundamentally, it is a serious "miscarriage of justice" to fail to consider a supposedly "unpreserved" argument when that argument implicates the threshold inquiry in this case: whether the school districts possess the authority under the Revised School Code to adopt their policies in the first place . It is a question that must be addressed by the *779 courts before the issue of field preemption can even be considered.[1] **739 (6) The decision of an individual litigant not to pursue an available line of argument, or even to relinquish an available issue, cannot impose on this Court an obligation to operate upon erroneous premises or to fail to take into account relevant statutes. MCL 380.11a(3) and MCL 750.237a have been called to the attention of this Court by the parties and they are controlling: the school districts have no authority to adopt the policies that have exclusively defined the present controversy at every stage of this litigation.
(7) Indeed, in Mack v. Detroit , 467 Mich. 186, 206-207, 649 N.W.2d 47 (2002), this Court was in a similar situation to the present one, and we correctly held that "[w]e absolutely oppose the dissenters' apparent position that although a controlling legal issue is squarely before this Court, in this case preemption by state law, the parties' failure or refusal to offer correct solutions to the issue limits this Court's ability to probe for and provide the correct solution." As we further explained, "addressing a controlling legal issue despite the failure of the parties to properly frame the issue is a well understood judicial principle" because "no one can seriously question the right of this Court to set forth the law as clearly as it can, irrespective whether the parties assist the Court in fulfilling its constitutional function." Id . at 207, 209, 649 N.W.2d 47. "The jurisprudence of Michigan cannot be, and is not, dependent upon whether individual parties accurately identify and elucidate controlling legal questions." Id . at 209, 649 N.W.2d 47.
**740 RESPONSE TO JUSTICE VIVIANO'S CONCURRENCE
(1) The concurrence asserts that pursuant to the "conflict preemption" doctrine, "[i]n order for a state law to conflict with and preempt a local regulation, the state law must expressly permit something the local regulation prohibits." To begin with, the question at issue here is not exactly one of conflict preemption. Instead, the more precise question is whether the school districts' policies are void because they exceed the powers granted to school districts by the Revised School Code. It is a question of governmental authority. As discussed earlier, the Code provides that school districts may enact policies "[p]roviding for the safety and welfare of pupils while at school" "except as otherwise provided by law...." MCL 380.11a(3)(b). The Revised School Code does not say "except *780 as otherwise expressly provided by law," but simply "except as otherwise provided by law." Therefore, the precise question is whether there is state law that provides for something other than what the school districts' policies provide for-whether state law and the school district policies are in conflict. As I have explained at length, they are in conflict and state law prevails.
(2) Furthermore, I am not at all convinced that "conflict preemption" somehow obligates state law to expressly permit what school district policies prohibit and why it is not enough that a reasonable reading of the law identifies a conflict. Nonetheless, it is well established that there are two types of preemption, express and implied, and there are two types of implied preemption, conflict and field. That is, conflict preemption is a form of implied preemption; indeed, even the majority refers to conflict preemption as "implied conflict preemption." Given this, it would be extremely odd **741 if implied conflict preemption somehow required an express conflict, and it does not.
(3) Moreover, although the concurrence is correct that there are cases that cite 56 Am. Jur. 2d, Municipal Corporations, § 374, p. 408, as stating that "a municipality cannot lawfully forbid what the legislature has expressly licensed, authorized, permitted, or required" (emphasis added), I am unaware of even a single case in Michigan that has ever held that a municipality or other subdivision of the state can forbid what the Legislature has permitted (either expressly or by implication).[2] Instead, it is remarkably well established that " 'in determining whether the provisions of a municipal ordinance conflict with a statute covering the same subject, the test is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits.' " Rental Prop. Owners Ass'n of Kent Co. v. Grand Rapids , 455 Mich. 246, 262, 566 N.W.2d 514 (1997), despite quoting 56 Am. Jur. 2d, Municipal Corporations, § 374, p. 408 (emphasis omitted); see also Detroit v. Qualls , 434 Mich. 340, 362, 454 N.W.2d 374 (1990) ; Ter Beek v. City of Wyoming , 495 Mich. 1, 20, 846 N.W.2d 531 (2014) ; People v. Llewellyn , 401 Mich. 314, 322 n. 4, 257 N.W.2d 902 (1977) ; Walsh v. River Rouge , 385 Mich. 623, 637, 189 N.W.2d 318 (1971) ; Miller v. Fabius Twp. Bd. , 366 Mich. 250, 256, 114 N.W.2d 205 (1962) ; Grand Haven v. Grocer's Coop. Dairy Co. , 330 Mich. 694, 698, 48 N.W.2d 362 (1951) ; People v. McDaniel , 303 Mich. 90, 93, 5 N.W.2d 667 (1942) ; Builders Ass'n , 295 Mich. at 277, 294 N.W. 677 ; Nat'l Amusement Co. , 270 Mich. at 617, 259 N.W. 342.
**742 (4) Furthermore, even assuming that an express conflict is required-a proposition nowhere evident in actual Michigan judicial decisions-there is an even clearer demonstration of a conflict in the instant case between the school districts' policies and MCL 750.237a(5)(c) than an express conflict: a logical conflict. As discussed earlier, MCL 750.237a(4) states, "Except as provided in subsection (5), an individual who possesses a weapon in a weapon free school zone is guilty of a misdemeanor," and MCL 750.237a(5)(c) states, "Subsection (4) does not apply to ... [a]n individual licensed by this state or another state to carry a concealed weapon." In other words, as a general proposition, people cannot possess a firearm on school property; however, CPL holders are excepted *781 from this prohibition. I really am not sure how the Legislature could have communicated its intentions any more clearly. Yet the school districts' policies here prohibit CPL holders from possessing firearms on school property. In other words, the school districts seek to prohibit what the state through MCL 750.237a(5)(c) permits.
(5) I agree with the concurrence to the extent that it asserts: (a) " MCL 750.237a must be read in pari materia with MCL 28.425o(1)(a)," (b) MCL 28.425o(1)(a)"provides that, except in narrow circumstances, a CPL holder may not carry a concealed pistol on school property," (c) MCL 28.425o"makes no reference to unconcealed or open carrying of pistols," and (d) "the exemption from criminal liability in MCL 750.237a(5)(c) only applies to the extent that a CPL holder complies with ... MCL 28.425o(1)(a)." However, I disagree with what the concurrence apparently believes follows from these propositions, to wit, that MCL 750.237a(5)(c) does not permit a CPL holder to possess an openly carried firearm on school property. As discussed earlier, MCL 750.237a(5)(c) permits a CPL
**743 holder to possess a firearm on school property, while MCL 28.425o(1)(a) prohibits a CPL holder from possessing a concealed firearm on school property. Reading these two statutes together in altogether conventional ways, it is clear that while a CPL holder cannot possess a concealed firearm on school property, he or she can possess an openly carried firearm on school property.[3] Contrary to the concurrence's implication, I do not rely upon the Legislature's silence in any way to justify this conclusion, but rather on the explicit language of MCL 750.237a(5)(c) and MCL 28.425o(1)(a).[4]
**744 (6) The concurrence asserts that " MCL 750.237a proscribes conduct-it does not provide any affirmative rights whatsoever to CPL holders...." This is really the heart of the disagreement between myself and the concurrence. By this assertion, the concurrence seeks to transform *782 the statutory conflict here into a metaphysical question. That is, notwithstanding that state law is explicit in excepting a class of persons from statutory prohibitions concerning the possession of firearms on school property, the concurrence asserts that this merely serves to relieve such persons of criminal sanctions for carrying firearms on school property rather than actually permitting them to carry firearms. This is a wonderfully fine distinction, but one that is unsupported by the language of the law (the subject of state law is the actual "possession" and "carrying" of firearms in particular venues), unsupported by the logic of the law ( MCL 750.237a(5)(c) serves to nullify the prohibitions of MCL 750.237a(4) ), unsupported by ordinary understandings of the people (that someone is exempt from a prohibition is the equivalent of stating that he or she has a right to do what would otherwise be prohibited),[5] and unsupported by common understandings of legislative intentions **745 (what conceivable purpose is served by large numbers of state laws whose only apparent consequence from the viewpoint of the concurrence is to render conduct lawful while not actually permitting that conduct?).[6] As discussed earlier, *783 this straightforward proposition is also supported by our caselaw. **746 Builders Ass'n , 295 Mich. at 276, 294 N.W. 677 ;[7] Nat'l Amusement Co. , 270 Mich. at 617, 259 N.W. 342.[8] The law is designed to communicate in a reasonably clear and practical manner the day-to-day rights and responsibilities of the people, and the Legislature has done exactly that in this instance, which ought not to be obscured or confused.
(7) The concurrence relies on Qualls , 434 Mich. at 363-364, 454 N.W.2d 374, because it " 'reject[ed] the rationale ... that that which the Legislature does not prohibit, it impliedly permits[.]' " The statute in that case stated that " '[t]he storage of fireworks at the site of a wholesaler, dealer, or jobber, except for a retailer who has goods on hand for sale to the public in a supervised display area, shall be as follows....' " Qualls , 434 Mich. at 370 n. 3, 454 N.W.2d 374 **747 ( LEVIN , J., dissenting), quoting former MCL 750.243d, repealed by 2011 PA 256 (emphasis omitted). The statute then set forth several requirements regarding the storage of fireworks, including weight restrictions. The ordinance at issue stated that " '[t]he storage of fireworks in a place of retail sales shall be limited to a gross weight of less than one hundred (100) pounds....' " Id . at 369 n. 1, 454 N.W.2d 374 (emphasis omitted). This Court held that the ordinance did not conflict with the statute because the statute was silent regarding how many pounds of fireworks a retailer could store. However, the majority did not even quote, let alone analyze, the actual language of the statute. That is, the majority concluded that the statute and the ordinance did not conflict, but it did so without examining the actual language of the statute. The issue was whether the statute and the ordinance could be harmonized, and the majority somehow concluded that those provisions could be harmonized without even bothering to examine the actual language of one of those provisions, indeed, the controlling provision. In other words, in a case in which the heart of the issue was one of statutory interpretation, the majority failed to interpret the actual words of the statute in dispute. Instead, it *784 appears that the majority simply relied on an Attorney General opinion that concluded that a previous version of the statute allowed a retailer to maintain on the premises a "reasonable amount" of fireworks. Id . at 363, 454 N.W.2d 374 ; OAG, 1979-1980, No. 5536, p. 335, at 337 (August 9, 1979). From this the majority concluded that the statute did not conflict with the ordinance. The majority also did not cite, let alone discuss, Home Builders Ass'n , 295 Mich. at 276, 294 N.W. 677, or Nat'l Amusement Co. , 270 Mich. at 617, 259 N.W. 342, two cases that, as discussed earlier, stand for the opposite proposition: that which the Legislature explicitly **748 excludes from prohibition, it impliedly permits.[9]
(8 ) Far more importantly, however, than either Qualls , Home Builders , or Nat'l Amusement is that the analysis of the concurrence is simply incompatible with first principles of logic . When a statute prohibits conduct and then excludes some class of persons from that prohibition, the only logical conclusion is that such class of persons is permitted to engage in the otherwise prohibited conduct. This is not an issue in which we look to precedent, but to the premises by which reasonable meaning is given to the law, to the premises by which the people are communicated their rights and responsibilities. As a matter of rudimentary logic, if something is explicitly not prohibited, it is permitted. I can imagine the question on a middle-school worksheet: the opposite of "not prohibited" is ______? Answer: permitted. It is quite that simple. The law is binary in this regard; conduct is either prohibited or it is not; there is not some Alice-in-Wonderland third realm of the law in which conduct is neither prohibited nor permitted. That is what not what legislatures intend by their enactments, and it is not what the people comprehend in these enactments; not one Michigan citizen in a hundred would look to the **749 relevant statutes in this case, read the prohibition on firearms in school zones and then read of the exception for CPL holders, and not conclude-altogether reasonably-that if he or she is a CPL holder, he or she is permitted to do what is prohibited to others. There are countless laws of this state predicated on exactly this same logic and this same commonsense understanding of language. See note 6 of this opinion. To adopt the position of the concurrence-"that that which the Legislature does not prohibit, it [also does not] impliedly permit"-is to engage in gamesmanship with the citizenry, to mislead them in the exercise of their rights and responsibilities, to play "gotcha" by holding people accountable to the law in indeterminate ways when they "confuse" relief from prohibition as the equivalent of permission. If an explicit legal exemption from a general prohibition does not mean that the otherwise prohibited conduct is permitted, what does it mean? What legal consequences are faced by persons who assume that such conduct is permitted and who engage in that conduct? *785 The approach advocated by the concurrence would lead to misunderstanding and uncertainty on the part of a law-abiding people seeking to discern from the prescriptions, and proscriptions, of their law what they can and cannot do.[10]
CONCLUSION
In summary, MCL 380.11a(3) authorizes school districts to enact school policies "except as otherwise provided by law," and MCL 750.237a"otherwise provide[s] by law." That is, MCL 750.237a authorizes CPL
**750 holders to openly carry firearms on school property while the school policies at issue here prohibit this conduct. Because school districts do not have the authority to enact school policies that conflict with state law, the school policies at issue here are invalid. When there is an enactment of the Legislature that provides that a person "may" do something and a subordinate public body provides that he or she "may not" do that same thing, there is a textual, a logical, a legal, and a practical conflict, and the former provision of law prevails; it is that simple. Therefore, I would reverse the judgments of the Court of Appeals.

The exception to the districts' policies for concealed carry under those limited conditions is to ensure alignment with state law, specifically MCL 28.425o.

To the extent that the plaintiffs suggest that the Legislature made a mistake in omitting school districts from MCL 123.1101 and that allowing a school district (but not a statutorily defined local unit of government) to impose firearm restrictions would lead to absurd results and defeat the stated intent of the Legislature, we note that when statutory language is unambiguous, the Court presumes that the Legislature "intended the meaning clearly expressed-no further judicial construction is required or permitted, and the statute must be enforced as written." DiBenedetto v. West Shore Hosp. , 461 Mich. 394, 402, 605 N.W.2d 300 (2000). And we see nothing absurd in the Legislature choosing to allow local school districts to make decisions that best suit their localities, leaving the door open to local prohibitions of firearms in schools in particular. Schools are distinct in many ways. What is more, what's good policy for Ann Arbor and Clio might not be good policy for Cadillac and Escanaba. We see nothing absurd about letting each school district, through its elected representatives, determine its own policy. And the plaintiffs' argument that the Legislature simply made a mistake is also not compelling given that the Legislature has shown that it is perfectly capable of defining "local unit of government" broadly and to include school districts when it wants to do so. See, e.g., MCL 15.501(d).

While of course not binding on this Court, the Court of Appeals has also held that resort to the remaining Llewellyn factors is unnecessary when a statute shows the Legislature's intent not to occupy the field. See, e.g., Gmoser's Septic Serv., LLC v. East Bay Charter Twp. , 299 Mich. App. 504, 513, 831 N.W.2d 881 (2013) (concluding that although the Llewellyn factors favored a finding that the Legislature preempted the field, "this is not a typical case" because the Legislature by statute had "specifically limited the preemptive effect of its statutory scheme" and finding no field preemption); Granger Land Dev. Co. v. Clinton Co. Bd. of Zoning Appeals , 135 Mich. App. 154, 159, 351 N.W.2d 908 (1984) ("Where a statute contains a provision for limited pre-emption (as in the present case), a court may not imply total pre-emption from the statutory history, the pervasiveness of the regulatory scheme, or the need for uniformity arising from the nature of the regulated subject matter. Section 30(4) provides for limited pre-emption; it also implicitly precludes a holding of total pre-emption.").

See also CADL , 298 Mich. App. at 251 n. 5, 826 N.W.2d 736 ( Gleicher , J., dissenting) (stating that "[w]hen a statute explicitly defines the field of its reach, use of the implied field-preemption doctrine described in Llewellyn violates the canons of statutory construction and any application of Llewellyn is unjustified").

We therefore need not reach the question whether the Court of Appeals in CADL or this case properly analyzed the remaining Llewellyn factors or whether those decisions are inconsistent in their analysis of those factors. Nor need we address the holding in CADL that MCL 123.1102 preempted the library's policy in that case because two entities covered by the statute created the district library that promulgated the policy.

The dissent reframes this argument as a "threshold" issue of whether the school districts have the authority to adopt the policies at issue in the first place. But there is no such animal as "threshold preemption"-under the dissent's analysis, the districts lack that authority only if their policies conflict with state law , i.e. if they are conflict-preempted. And field preemption precludes all local regulation of a subject matter, while conflict preemption only precludes local regulation to the extent it conflicts with state law. Thus, it is difficult to understand the basis for the dissent's conclusion that its analysis involves "a question that must be addressed by the courts before the issue of field preemption can even be considered." See, e.g., Rental Prop. Owners Ass'n of Kent Co. v. Grand Rapids , 455 Mich. 246, 256-263, 566 N.W.2d 514 (1997) (resolving first whether a local ordinance was field-preempted before analyzing whether it was conflict-preempted by a state statute). In other words, this Court's typical analysis of such issues proceeds exactly as we have done here. It is therefore telling that however "logical" the dissent calls its order-of-operations approach, it has no basis in our law . And as correctly framed, the urgency of the dissent's plea that we must reach the conflict-preemption issue notwithstanding plaintiffs' abandonment of it loses much of its force.

This argument is perfunctory and interwoven with the plaintiffs' argument that the districts' policies are field-preempted. See, e.g., Michigan Gun Owners' Supplemental Brief at 17 (asserting that Ann Arbor's policy is "expressly and impliedly preempted by Michigan firearms regulations" just after citing the Llewellyn test for field preemption and as part of its discussion of the first Llewellyn factor).

See Michigan Supreme Court, Oral Arguments in Michigan Gun Owners, Inc v. Ann Arbor Public Schools< https://www.youtube.com/watch?v=rvGL1daiFGQ> at 6:12 to 6:29 (accessed July 10, 2018):
Justice McCormack : But that's a-that's a different kind of preemption, that's conflict preemption, not field preemption.
Mr. Makowski : Right. And we've not briefed that issue . If the Court would like me to brief the issue of conflict preemption, I certainly can as a supplement.
Justice McCormack : Well that-I mean, is it an issue you've raised and pleaded throughout your litigation?
Mr. Makowski : I have not. [Emphasis added.]
Indeed, if anything, the plaintiffs specifically disclaimed such an argument even when presented with the opportunity to embrace it. See id . at 5:15 to 5:29; see also Michigan Supreme Court, Oral Arguments in Michigan Open Carry, Inc. v. Clio Area School District< https://www.youtube.com/watch?v=ln1bsBx2F8A> at 14:36 to 14:49 (accessed July 10, 2018).

Perhaps if the plaintiffs had articulated the dissent's theory, we would have found it appropriate to resolve it. But they didn't. (Maybe they didn't for the reasons in Justice Viviano 's concurring opinion.) And whatever the propriety of the Court's decision in Mack v. Detroit , 467 Mich. 186, 649 N.W.2d 47 (2002), to resolve that case on an issue not raised in the defendant's briefing, at least it was raised at oral argument and not expressly disclaimed. That significantly distinguishes this case from Mack and exposes the dissent's judicial overreach: The dissent is ready to say point, game, match for the plaintiffs on an argument almost entirely of its own construction. There are plenty of considerations counseling against the dissent's position that it is "of no consequence" that the plaintiffs have not made the dissent's argument. If it is truly "of no consequence," best we ditch the adversarial system of law today, as under the dissent's approach we the Court will always know not only the better answer than any supplied by the parties but even the better questions than those asked by the parties.
Finally, the opinion concurring in part and dissenting in part would grant leave to appeal and direct the parties to brief this issue. It is difficult to take that suggestion very seriously. The concurrence/dissent wants to have it both ways: we should grant leave because these cases "present an important set of legal issues" while purporting to "take rules regarding issue preservation and abandonment very seriously...." If ever we "take rules regarding issue preservation and abandonment very seriously," it should be here. Granting leave to appeal under the circumstances presented would send a message that we should and do decline to send: Abandon an issue in your application for leave to appeal? And definitively distance yourself from that legal theory at oral argument? Worry not! The Court will revive the theory for you and give you free rein to try again after hearing oral argument on that application.

I agree with the majority's decision not to reach this issue, since the parties chose not to pursue this theory in our Court even when given the opportunity to do so. I write simply to point out some of the inherent flaws in the dissent's reasoning, and also to explain why I disagree with the partial concurrence that we should grant leave to address the issue.

Indeed, the majority and concurring justices hold to the contrary, and the dissenting justice states that he "do[es] not necessarily disagree with" this conclusion.

Rental Prop. Owners Ass'n of Kent Co. v. Grand Rapids , 455 Mich. 246, 262, 566 N.W.2d 514 (1997) (emphasis altered), quoting 56 Am. Jur. 2d, Municipal Corporations, § 374, pp. 408-409 ; see also Detroit v. Qualls , 434 Mich. 340, 362, 454 N.W.2d 374 (1990) ; Miller v. Fabius Twp. Bd. , 366 Mich. 250, 256-257, 114 N.W.2d 205 (1962).

Miller , 366 Mich. at 258, 114 N.W.2d 205, citing City of Howell v. Kaal , 341 Mich. 585, 590-591, 67 N.W.2d 704 (1954).

MCL 380.11a(3)(b) (permitting the schools to regulate for the safety of pupils "except as otherwise provided by law").

See Bradley v. Saranac Community Schs. Bd. of Ed. , 455 Mich. 285, 298, 565 N.W.2d 650 (1997) ("This Court recognizes the maxim expressio unius est exclusio alterius ; that the express mention in a statute of one thing implies the exclusion of other similar things."). This is not to say, of course, that the statute prohibits the open carrying of pistols except as provided in MCL 28.425c(3)(b). Instead, my point is more modest-it is only that, for purposes of conflict-preemption analysis, this particular statutory provision cannot be read as expressing a lawful right for CPL holders to openly carry firearms anywhere in the state. Nor could I locate any other statute regulating the open carrying of a firearm in our state. This is not surprising, however, since the "vast majority of ... [state] statutes deal with concealed carry; while open carry is sometimes permitted in these states, nearly all of the laws focus on the right to carry a concealed weapon." Note, Open Carry For All: Heller and Our Nineteenth-Century Second Amendment , 123 Yale L J 1486, 1497 (2014). The focus on concealed carrying stems from the fact that concealed carrying was long viewed with greater suspicion than the open carrying of weapons and thus as being in more need of regulation; accordingly, courts have struck down open-carry bans on constitutional grounds. Rosenthal, The Limits of Second Amendment Originalism and the Constitutional Case for Gun Control , 92 Wash. U. L. Rev. 1187, 1210 (2015) (noting that in the nineteenth century, "[a]lthough laws prohibiting open-carry were more often than not invalidated, concealed-carry bans were generally upheld against constitutional challenge under the Second Amendment or state-law analogues"); Open Carry for All , 123 Yale L. J. at 1500 ("[A] clear pattern emerges from [nineteenth-century caselaw in which] ... states were allowed to ban the concealed carry of weapons but not their open carry. This was not an arbitrary choice-instead, the dichotomy between open and concealed carry underscored antebellum understandings of permissible self-defense and public safety.").
In any event, I certainly do not mean to suggest that our citizens only have a right to openly carry a firearm if a statute expressly authorizes them to do so. Instead, our citizens have broad rights to bear firearms that are protected by the Second Amendment. U.S. Const, Am II ; see also Dist. of Columbia v. Heller , 554 U.S. 570, 610-614, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) (noting caselaw upholding a constitutional right to openly carry firearms). As the United States Supreme Court has recognized, however, those rights are subject to certain restrictions. See Heller , 554 U.S. at 626, 128 S.Ct. 2783 (recognizing a broad right to bear firearms while noting that the Court was not "cast[ing] doubt on longstanding prohibitions on the possession of firearms ... in sensitive places such as schools and government buildings").

The relevant subsections of MCL 750.237a state, in relevant part:
(4) Except as provided in subsection (5), an individual who possesses a weapon in a weapon free school zone is guilty of a misdemeanor....
* * *
(5) Subsection (4) does not apply to any of the following:
* * *
(c) An individual licensed by this state or another state to carry a concealed weapon.

See Int'l Business Machines Corp. v. Dep't of Treasury , 496 Mich. 642, 652, 852 N.W.2d 865 (2014) (opinion by Viviano , J.) ("[I]n the construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although they were enacted at different times, and contain no reference to one another."). Notably, MCL 28.425o(1)(a) makes explicit reference to MCL 750.237a. See MCL 28.425o(1)(a) ("As used in this section, 'school' and 'school property' mean those terms as defined in ... MCL 750.237a.").

MCL 28.425o provides, in pertinent part:
(1) Subject to subsection (5), an individual licensed under this act to carry a concealed pistol, or who is exempt from licensure under section 12a(h), shall not carry a concealed pistol on the premises of any of the following:
(a) A school or school property except that a parent or legal guardian of a student of the school is not precluded from carrying a concealed pistol while in a vehicle on school property, if he or she is dropping the student off at the school or picking up the student from the school.

Post at 775 ( Markman , C.J., dissenting) (emphasis omitted).

At various points and in various ways, the dissent asserts that "if something is explicitly not prohibited, it is permitted." Post at 784. There is a sense in which this is true, although the dissent's resort to principles of logic is open to some question. See, e.g., Aldisert, Logic For Lawyers: A Guide to Clear Legal Thinking (South Bend: National Institute for Trial Advocacy, 1997), pp. 158-163. But the sense in which it is not true is the sense that matters for purposes of a conflict-preemption analysis, and that analysis is dictated by our precedents, not by a middle-school primer.

As noted above, the conduct authorized by MCL 28.425c(3) is expressly limited by MCL 28.425o. See MCL 28.425c(3).

The dissent believes that the Legislature has "clearly and straightforwardly denied school districts the authority to prohibit CPL holders from openly carrying firearms on school property," post at 774, and indeed cannot even conceive of "how the Legislature could have communicated its intentions any more clearly," post at 780-81. One obvious way would be for the Legislature to add school districts to the list of local government entities covered by the express preemption statute, see MCL 123.1101 and MCL 123.1102, something it is already considering. See 2017 SB 586. Alternatively, the Legislature could pass a regulatory law that expressly permits the open carrying of a firearm on school property.

Qualls , 434 Mich. at 361, 454 N.W.2d 374 ; see also former MCL 750.243d ("The storage of fireworks at the site of a wholesaler, dealer, or jobber, except for a retailer who has goods on hand for sale to the public in a supervised display area, shall be as follows...."), 1968 PA 358, as amended by 1980 PA 422; repealed by 2011 PA 256.

Qualls , 434 Mich. at 369 n. 1, 454 N.W.2d 374 ( Levin , J., dissenting) (" 'Retail sales. The storage of fireworks in a place of retail sales shall be limited to a gross weight of less than one hundred (100) pounds....' "), quoting Detroit Municipal Code, § 19-3-70 (emphasis omitted).

Qualls , 434 Mich. at 376, 454 N.W.2d 374 ( Levin , J., dissenting).

Id . at 361, 454 N.W.2d 374 (opinion of the Court).

Id . at 363-364, 454 N.W.2d 374.

Id . at 364, 454 N.W.2d 374. The dissent does not know quite how to get around the holding in Qualls . It first tries to ignore Qualls . Post at 780 ("I am unaware of even a single case in Michigan that has ever held that a municipality or other subdivision of the state can forbid what the Legislature has permitted (either expressly or by implication)."). Then, in a footnote, the dissent attempts to distinguish it with the bewildering assertion that since "this Court concluded that the Legislature did not permit the conduct in dispute," Qualls "thus does not stand for the proposition that a municipality can forbid what the Legislature has permitted." Post at 780 n. 2. Of course, this Court concluded that the Legislature did not permit the conduct in dispute precisely because it rejected the dissent's major premise in this case, i.e., that an express exemption in a criminal statute is an implied grant of permission for an individual to engage in the exempted activity that is not subject to local regulation. Qualls , 434 Mich. at 363-364, 454 N.W.2d 374 (opinion of the Court) ("Therefore, we reject the rationale employed by the dissent that that which the Legislature does not prohibit, it impliedly permits...."). Finally, the dissent disparages Qualls and is apparently of the belief that it should be overruled. See post at 783 ("[T]he [Qualls ] majority did not even quote, let alone analyze, the actual language of the statute.... In other words, in a case in which the heart of the issue was one of statutory interpretation, the majority failed to interpret the actual words of the statute in dispute."). I take no position on whether Qualls was correctly decided because no party has asked us to overrule it. Instead, at this juncture, I would simply treat it as a binding and controlling precedent of our Court.

In the analogous context of federal preemption law, "[i]t is the rule that exceptions to broad prohibitory statutes generally have no preemptive effect. ... The Supreme Court has reasoned that a finding of preemption in this context is not only 'inappropriate,' but 'illogical.' " Malabed v. North Slope Borough , 335 F.3d 864, 872 (CA 9, 2003), quoting Exxon Corp. v. Governor of Maryland , 437 U.S. 117, 132, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978).

Miller , 366 Mich. at 255, 114 N.W.2d 205 (quotation marks omitted).

Id . at 252, 114 N.W.2d 205.

Id . at 260, 114 N.W.2d 205 ( Souris , J., dissenting).

Id . at 259, 114 N.W.2d 205 (opinion of the Court).

Id .

Builders Ass'n v. Detroit , 295 Mich. 272, 294 N.W. 677 (1940).

Id . at 275, 294 N.W. 677.

Id . at 273-274, 294 N.W. 677.

Id . at 276-277, 294 N.W. 677.

See Qualls , 434 Mich. at 364, 454 N.W.2d 374, discussed above.

Nat'l Amusement , 270 Mich. at 614-615, 259 N.W. 342, quoting 1933 PA 65.

Id . at 614, 259 N.W. 342.

Id . at 617, 259 N.W. 342.

Post at 775-76.

Nat'l Amusement , 270 Mich. at 614-615, 259 N.W. 342, quoting 1933 PA 65.

Id . at 617, 259 N.W. 342.

MCL 28.425c(3)(a) ; MCL 28.425o.

MCL 750.237a.

Nat'l Amusement , 270 Mich. at 617, 259 N.W. 342 ; see also Qualls , 434 Mich. at 364, 454 N.W.2d 374.

It is very common, if not routine, for one or more members of this Court to inform counsel during oral argument that the outcome of the specific case being argued by counsel is less important to the Court than the next hundred cases raising related issues that will be governed by the outcome of this case. Because it is imperative that we, as the Court of last resort for Michigan, timely and clearly expound on the significant jurisprudential issues of our state, we should fully resolve this case, which presents issues of vital importance to the people. Notwithstanding counsel's exchange with Justice McCormack during oral argument in which he improvidently ceded the conflict-preemption issue, the importance of the next hundred cases counsels that this Court should exercise its discretion to grant leave to appeal and direct the parties to specifically brief the conflict-preemption question.

This much is also clear from our recent practice. See, e.g., People v. Cowan , 501 Mich. 900, 902 N.W.2d 418 (2017) (remanding to the circuit court to conduct an evidentiary hearing into the defendant's claim of ineffective assistance of counsel despite the defendant's not clearly raising the issue below); People v. Temelkoski , 498 Mich. 942, 872 N.W.2d 219 (2015) (requesting that the parties address additional issues not initially raised in the application).

Contrary to the majority's assertion, whether a school district possesses the authority to adopt a particular policy is properly described as a "threshold" inquiry. If the district lacks such authority in the first place, there is no need to address further whether the state has or has not occupied the field of regulation in a particular realm. A district only possesses authority granted by statute, and in order to determine whether it possesses a particular authority, we must first look to the statute that purports to grant that authority, in this case the Revised School Code. If the authority is lacking, that is the end of the analysis. Yet, the majority concludes that the school district policies at issue are valid without any reference to the code. How can the majority possibly know whether these policies are valid without first assessing whether the code grants a district the authority to enact them? Because the code provides that a district may enact policies "providing for the safety and welfare" of students "except as otherwise provided by law," MCL 380.11a(3), an altogether logical continuation of the "threshold" inquiry is whether there is any law that "otherwise provides." And this is where MCL 750.237a comes into play; it is exactly a law that "otherwise provides." Thus, the present inquiry does not constitute a "threshold" inquiry only if, as the majority has done, it is assumed entirely without analysis that school districts possess the legal authority to enact the policies in dispute in the first place.

The concurring justice might believe that Qualls stands for this proposition, but in that case, as discussed later, this Court concluded that the Legislature did not permit the conduct in dispute and thus does not stand for the proposition that a municipality can forbid what the Legislature has permitted.

The concurrence asserts that MCL 28.425c(3)"opens a gaping hole in [my] theory...." MCL 28.425c(3) provides generally that a CPL holder can "carry a pistol concealed on or about his or her person anywhere in this state" and can "carry a pistol in a vehicle , whether concealed or not concealed, anywhere in this state." (Emphasis added.) However, the issue in this case pertains specifically to the possession of firearms on school property; MCL 750.237a and MCL 28.425o(1)(a) pertain specifically to the possession of firearms on school property; and it is well established that "a specific statutory provision controls over a related but more general statutory provision," DeFrain v. State Farm Mut. Auto. Ins. Co. , 491 Mich. 359, 367 n. 22, 817 N.W.2d 504 (2012) -hence my reliance on the two statutes that specifically pertain to the possession of firearms on school property rather than the more general statute that does not specifically pertain to the possession of firearms on school property and indeed notes that its general terms are "subject to" other provisions of the law, including explicitly MCL 28.425o. The concurrence concludes that "by expressly authorizing a licensee to openly carry a pistol in a vehicle, [MCL 28.425c(3) ] cannot be read as authorizing a right to openly carry a pistol more broadly." I agree and that is exactly why I do not rely on MCL 28.425c(3) as authorizing such a right. Rather, I rely on MCL 750.237a(5)(c) as authorizing such a right, at least on school property, and, as recognized even by the concurrence, MCL 28.425c(3) does not "prohibit [ ] the open carrying of pistols...."

That is, I do not conclude that the Legislature, by failing to prohibit the open carrying of a firearm on school property in MCL 28.425o(1)(a), was expressly establishing a right to openly carry a firearm on school property. Instead, I conclude that MCL 750.237a(5)(c) establishes the right of a CPL holder to possess an openly carried firearm on school property and that MCL 28.425o(1)(a) does not compromise that authority. Thus, again, it is not the silence of MCL 28.425o(1)(a) that creates the right, but the authorization of MCL 750.237a(5)(c) that does so.

Indeed, if MCL 750.237a(5)(c) does not mean that CPL holders can possess openly carried firearms on school property, I am unsure what it does mean. Indeed, I am unsure what practical meaning, if any, the concurrence itself ascribes to MCL 750.237a(5)(c). Given that MCL 28.425o(1)(a) indisputably controls under what circumstances a CPL holder can possess a concealed firearm on school property, the concurrence obviously does not believe that MCL 750.237a(5)(c) controls in this regard. Therefore, if, as the concurrence asserts, MCL 750.237a(5)(c) also does not control in regard to whether a CPL holder can possess an openly carried firearm on school property, when does it control? It seems that MCL 750.237a(5)(c) is rendered superfluous under the reasoning of the concurrence, contrary to the well-established rule that "[w]hen interpreting a statute, we must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory." People v. Rea , 500 Mich. 422, 427-428, 902 N.W.2d 362 (2017) (citation and quotation marks omitted).

Many examples of this type of legislation can be found in the Penal Code. For example, MCL 750.234e(1) provides that "a person shall not willfully and knowingly brandish a firearm in public," but MCL 750.234e(2)(a) provides that "[s]ubsection (1) does not apply to ... [a] peace officer lawfully performing his or her duties as a peace officer." I would imagine that everybody would agree that MCL 750.234e works to permit a peace officer, lawfully performing his or her duties as a peace officer, to brandish a firearm in public. In addition, MCL 750.449a provides that "a person who engages or offers to engage the services of another person, not his or her spouse, for the purpose of prostitution, lewdness, or assignation, by the payment in money or other forms of consideration, is guilty of a misdemeanor," but MCL 750.451a provides that MCL 750.449a does "not apply to a law enforcement officer while in the performance of the officer's duties as a law enforcement officer." Again, I would imagine that everybody would agree that MCL 750.451a works to permit a law enforcement officer, while in the performance of the officer's duties as a law enforcement officer, to solicit a prostitute. Indeed, this understanding is clearly supported by MCL 750.451b, which provides that "[s]ection 451a does not apply to a law enforcement officer if the officer engages in sexual penetration ... while in the course of his or her duties." In other words, if MCL 750.451a did not permit a police officer to engage in the solicitation of a prostitute, there would have been no need for the Legislature to enact MCL 750.451b as an exception to that otherwise permitted conduct. See also MCL 750.33 ; MCL 750.45 ; MCL 750.141a ; MCL 750.160a ; MCL 750.195 ; MCL 750.197 ; MCL 750.200 ; MCL 750.224 ; MCL 750.224b ; MCL 750.224c ; MCL 750.224e ; MCL 750.224f ; MCL 750.227b ; MCL 750.227f ; MCL 750.227(2) and MCL 750.231a ; MCL 750.233 ; MCL 750.234 ; MCL 750.234a ; MCL 750.234d ; MCL 750.235 ; MCL 750.282(1)(c) ; MCL 750.329 ; MCL 750.410b(1) ; MCL 750.411w ; MCL 750.415(6) ; MCL 750.473 ; MCL 750.508 ; MCL 750.539k ; MCL 750.539l ; MCL 750.552.

The concurrence purports to distinguish Builders Ass'n on the basis that the "school policies do not criminalize anything," whereas the ordinance at issue in Builders Ass'n did attempt to criminalize conduct the Legislature expressly exempted from criminal penalty. However, this is a distinction without significance. It is well established that "in determining whether the provisions of a municipal ordinance conflict with a statute covering the same subject, the test is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits."Rental Prop. Owners Ass'n of Kent Co. , 455 Mich. at 262, 566 N.W.2d 514, quoting 56 Am. Jur. 2d, Municipal Corporations, § 374, p. 408 (emphasis omitted). Because the school districts' policies attempt to prohibit an act that the statute permits, the school policies are void. It does not matter that the schools are not attempting to criminalize the conduct; all that matters is that the schools are attempting to prohibit the conduct.

The concurrence purports to distinguish Nat'l Amusement Co. on the basis that the statute at issue here prohibits conduct, whereas the statute at issue in Nat'l Amusement Co. "provided an affirmative right to engage in the conduct at issue and established the circumstances under which the conduct could be carried out." However, this is also a distinction without significance. Although the statute at issue here is generally prohibitory, by creating an exception to a prohibition, it also "provided an affirmative right to engage in the conduct at issue and established the circumstances under which the conduct could be carried out." That is, it provides that a person can possess an openly carried firearm on school property as long as that person is a CPL holder.

The concurrence also cites Miller , 366 Mich. 250, 114 N.W.2d 205, in support of its position. However, Miller is significantly distinguishable. Miller involved a state statute that prohibited waterskiing from one hour after sundown to one hour before sunrise and an ordinance that prohibited waterskiing on a specific lake after 4:00 p.m. until the following day at 10:00 a.m. In short, the ordinance did not conflict with the statute because the ordinance simply broadened the prohibition contained in the statute; there was no direct conflict between the two. Miller did not involve a statute such as the one at issue here that includes an express exception to a prohibition. While an ordinance may broaden prohibitions contained in a statute, an ordinance cannot prohibit what a statute permits.

Furthermore, matters of logic, as with a judge's personal sense of judicial philosophy or jurisprudence, such as his or her view of appropriate tools of statutory and constitutional interpretation, are not binding in the same sense as legal holdings.