# Syllabus

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

DeRUITER v TOWNSHIP OF BYRON

Docket No. 158311. Argued on application for leave to appeal October 3, 2019. Decided April 27, 2020.

Christie DeRuiter, a registered qualifying medical marijuana patient and a registered primary caregiver to qualifying patients, brought an action in the Kent Circuit Court against Byron Township, alleging that the township's zoning ordinance—which required that a primary caregiver obtain a permit before cultivating medical marijuana and that the caregiver cultivate the marijuana within a dwelling or garage in a residentially zoned area within the township as part of a regulated home occupation at a full-time residence—directly conflicted with and was therefore preempted by the Michigan Medical Marihuana Act (the MMMA), MCL 333.26421 *et seq.* DeRuiter cultivated marijuana in an enclosed, locked facility at a commercially zoned property she rented in the township; she did not obtain a permit from the township before cultivating the medical marijuana as a primary caregiver. At the township's direction, DeRuiter's landlord ordered her to stop cultivating medical marijuana at the property or face legal action. When the township attempted to enforce its zoning ordinance, DeRuiter filed the instant action, seeking a declaratory judgment regarding the ordinance's legality; the township countersued, seeking a declaration that the ordinance did not conflict with the MMMA. Both parties moved for summary disposition, and the court, Paul J. Sullivan, J., granted summary disposition in favor of DeRuiter, holding that the ordinance directly conflicted with the MMMA and that it was therefore preempted by the act. The Court of Appeals, HOEKSTRA, P.J., and MURPHY and MARKEY, JJ., affirmed the trial court order, concluding that the MMMA preempted defendant's home-occupation zoning ordinance because the ordinance directly conflicted with the MMMA by prohibiting what the MMMA permitted and because the ordinance improperly imposed regulations and penalties upon persons who engage in the MMMA-compliant medical use of marijuana. 325 Mich App 275 (2018). Byron Township applied for leave to appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other action. 503 Mich 942 (2019).

In a unanimous opinion by Justice BERNSTEIN, the Supreme Court, in lieu of granting leave to appeal, *held*:

Under the conflict-preemption doctrine, the MMMA does not nullify a municipality's inherent authority to regulate land use under the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*, as long as (1) the municipality does not prohibit or penalize the cultivation of medical marijuana and (2) the municipality does not impose regulations that are unreasonable and

inconsistent with regulations established by state law. MCL 333.26424(b)(2) states that primary caregivers and qualifying patients must keep their plants in an enclosed, locked facility in order for those individuals to be entitled to the MMMA protections in MCL 333.26424(a) and (b). Because an enclosed, locked facility may be found in various locations on various types of property, the township's ordinance limiting where medical marijuana must be cultivated within the locality did not directly conflict with the MMMA's requirement that marijuana plants be kept in an enclosed, locked facility. The township's ordinance requiring primary caregivers to obtain a permit and pay a fee before using a building or structure within the township to cultivate medical marijuana also did not directly conflict with the MMMA because the ordinance did not effectively prohibit the medical use of marijuana.

1. Generally, local governments may control and regulate matters of local concern when that power is conferred by the state. However, state law may preempt a local regulation either expressly or by implication. Implied preemption can occur when the state has occupied the entire field of regulation in a certain area (field preemption) or when a local regulation directly conflicts with state law (conflict preemption). A direct conflict exists when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits; there is no conflict between state and local law when a locality enacts regulations that are not unreasonable and inconsistent with regulations established by state law so long as the state regulatory scheme does not occupy the field. That is, while a local ordinance is preempted when it bans an activity that is authorized and regulated by state law, a local governmental unit may add to the conditions in a statute as long as the additional requirements do not contradict the requirements set forth in the statute. A court must review both the statute and the local ordinance to determine whether conflict preemption applies.

2. MCL 333.26424(a) and (b) provide that qualifying patients and primary caregivers are immune from arrest, prosecution, or penalty in any manner, including, but not limited to, civil penalty or disciplinary action for the medical use of marijuana in accordance with the MMMA. In turn, MCL 333.26424(b)(2) provides that primary caregivers and qualifying patients must keep their plants in an enclosed, locked facility in order to qualify for the immunity. This requirement sets forth the type of structure marijuana plants must be kept and grown in for a patient or a caregiver to be entitled to the MMMA protections in MCL 333.26424(a) and (b), but the provision does not address where marijuana may be grown. Under *Ter Beek v City of Wyoming*, 495 Mich 1 (2014), a local ordinance conflicts with the MMMA when the ordinance results in a complete prohibition of the medical use of marijuana; however, the MMMA does not foreclose all local regulation of marijuana. In that regard, the act does not nullify a municipality's inherent authority to regulate land use under the MZEA as long as (1) the municipality does not prohibit or penalize the cultivation of medical marijuana and (2) the municipality does not impose regulations that are unreasonable and inconsistent with regulations established by state law. Because an enclosed, locked facility may be found in various locations on various types of property, a local regulation limiting where medical marijuana must be cultivated within a locality does not conflict with the statutory requirement that marijuana plants be kept in an enclosed, locked facility. In this case, the township's ordinance allowed for the medical use of marijuana by a registered primary caregiver but placed limitations on where the caregiver could cultivate marijuana within the township. The ordinance's geographical restriction added to and complemented the limitations imposed by the MMMA; it did not directly conflict with the MMMA. While the ordinance went further in its regulation than the MMMA, the township appropriately used its authority under the

MZEA to craft an ordinance that did not directly conflict with the MMMA's provision requiring that marijuana be cultivated in an enclosed, locked facility. The township also had authority under the MZEA to require zoning permits and permit fees for the use of buildings and structures within its jurisdiction. The township's ordinance requiring primary caregivers to obtain a permit and pay a fee before using a building or structure within the township to cultivate medical marijuana did not directly conflict with the MMMA because the ordinance did not effectively prohibit the medical use of marijuana, and DeRuiter did not argue that the requirements for obtaining a permit were so unreasonable as to create a conflict. To the extent that DeRuiter argued that the immunity provisions of the MMMA contributed to a blanket prohibition on local governments regulating the medical use of marijuana with respect to time, place, and manner of such use, that argument sounded in field preemption; but neither the trial court nor the Court of Appeals reached the issue of field preemption, and DeRuiter conceded that her appeal did not concern the issue of field preemption. The Court of Appeals erred by affirming the trial court's grant of summary disposition in favor of DeRuiter.

Reversed and remanded to the trial court for further proceedings.

©2020 State of Michigan

# OPINION

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED April 27, 2020

S T A T E O F M I C H I G A N

SUPREME COURT

CHRISTIE DeRUITER,

      Plaintiff/Counterdefendant-
      Appellee,

v                         No. 158311

TOWNSHIP OF BYRON,

      Defendant/Counterplaintiff-
      Appellant.

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

In this case, we address whether defendant-counterplaintiff Byron Township's zoning ordinance, which regulates the location of registered medical marijuana caregiver activities and requires that a "primary caregiver"[1] obtain a permit before cultivating

---

[1] For purposes of the Michigan Medical Marihuana Act, MCL 333.26421 *et seq.*, a "primary caregiver" means "a person who is at least 21 years old and who has agreed to

medical marijuana, is preempted by the Michigan Medical Marihuana Act (the MMMA), MCL 333.26421 *et seq.*[2] Specifically, Byron Township's ordinance requires that medical marijuana caregivers cultivate marijuana as a "home occupation" at a full-time residence. Byron Township Zoning Ordinance, § 3.2.H.1. Plaintiff-counterdefendant, Christie DeRuiter, a registered qualifying patient[3] and primary caregiver under the MMMA,[4] cultivated medical marijuana on rented commercially zoned property. DeRuiter's landlord was directed by the Byron Township supervisor to cease and desist the cultivation of medical marijuana or face legal action. After Byron Township attempted to enforce its zoning ordinance, DeRuiter sought a declaratory judgment regarding the ordinance's legality. Byron Township countersued and also sought a declaratory judgment regarding the ordinance's legality, arguing that the ordinance did not conflict with the MMMA. The trial court held that § 3.2 of Byron Township's zoning ordinance directly conflicted with, and was therefore preempted by, the MMMA. The trial court granted DeRuiter's motion for summary disposition and denied Byron Township's motion for summary disposition.

---

assist with a patient's medical use of marihuana . . . ." MCL 333.26423(k). Primary caregivers with a registry identification card possess immunity from criminal prosecution under Michigan law for cultivating marijuana for their qualifying patients. MCL 333.26424(b).

[2] This opinion addresses zoning in the context of medical marijuana use and the MMMA. It does not address any zoning issues that may arise from the voter-initiated legalization of recreational marijuana. See 2018 IL 1, effective December 6, 2018.

[3] "Qualifying patient" means "a person who has been diagnosed by a physician as having a debilitating medical condition." MCL 333.26423(*l*).

[4] Although DeRuiter is both a registered qualifying patient and a primary caregiver, her challenge to Byron Township's zoning ordinance concerns only her rights as a primary caregiver.

2

The Court of Appeals affirmed the trial court in a published opinion. *DeRuiter v Byron Twp*, 325 Mich App 275, 287; 926 NW2d 268 (2018).

Because we conclude that the Byron Township Zoning Ordinance does not directly conflict with the MMMA, we reverse the Court of Appeals' judgment and remand this case to the trial court for proceedings consistent with this opinion.

## I. FACTS

Christie DeRuiter, a licensed qualifying patient and registered primary caregiver under the MMMA, began growing marijuana on rented commercially zoned property because she did not want to grow marijuana at her residence. DeRuiter grew the marijuana in an "enclosed, locked facility." See MCL 333.26423(d).

After learning of DeRuiter's cultivation of medical marijuana on commercially zoned property, the Byron Township supervisor determined that DeRuiter's growing operation constituted a zoning violation under the Byron Township Zoning Ordinance. The zoning ordinance contains a locational restriction[5] that allows for the cultivation of medical marijuana by primary caregivers, but only as "a home occupation." Byron Township Zoning Ordinance, § 3.2.H.1.[6] "Home occupation" is defined by Byron Township as follows:

---

[5] We use "locational restriction" in this opinion to denote a zoning restriction that regulates where an activity may occur within a municipality.

[6] The township amended § 3.2 of the Byron Township Zoning Ordinance on July 11, 2016. The postamendment version of the zoning ordinance is at issue in this case.

3

An occupation or profession that is customarily incidental and secondary to the use of a dwelling. It is customarily conducted within a dwelling, carried out by its occupants utilizing equipment customarily found in a home and, except for a sign allowed by this Ordinance, is generally not distinguishable from the outside. [Byron Township Zoning Ordinance, § 2.5.]

Under this home-occupation requirement, the ordinance mandates that the "medical use" of marijuana by a primary caregiver be "conducted entirely within a dwelling[7] or attached garage, except that a registered primary caregiver may keep and cultivate [medical marijuana], in an enclosed, locked facility. . . ." Byron Township Zoning Ordinance, § 3.2.H.2.d (quotation marks omitted). The ordinance also requires that "[t]he medical use of marijuana shall comply at all times with the MMMA and the MMMA General Rules, as amended." Byron Township Zoning Ordinance, § 3.2.H.2.a.

Furthermore, Byron Township requires that primary caregivers obtain a permit to grow medical marijuana. Byron Township Zoning Ordinance, § 3.2.H.3. If a primary caregiver who holds a permit departs from the requirements of either the ordinance or the MMMA, their permit can be revoked. Byron Township Zoning Ordinance, § 3.2.H.3.c. Byron Township's zoning ordinance clarifies that a permit is not required for a qualifying patient's cultivation of marijuana for personal use and that a permit is not required for a qualifying patient's possession or use of marijuana in their dwelling. Byron Township

---

[7] The term "dwelling unit" is defined as "[a] building or portion of a building, designed for use and occupancy by one family for living and sleeping purposes and with housekeeping facilities. A recreational vehicle, vehicle chassis, tent or other transient residential use is not considered a dwelling." Byron Township Zoning Ordinance, § 2.3. Byron Township's zoning ordinance does not permit dwellings by right in commercially zoned districts. See Byron Township Zoning Ordinance, §§ 6.1 and 6.2.

4

Zoning Ordinance, § 3.2.H.5 and § 3.2.H.6. DeRuiter did not obtain a permit from Byron Township before cultivating medical marijuana as a primary caregiver.

In March 2016, Byron Township sent DeRuiter's landlord a letter, directing the landlord to cease and desist DeRuiter's cultivation of medical marijuana and to remove all marijuana and related equipment or be subject to enforcement action. The letter asserted that violations of the zoning ordinance were a nuisance per se.

In May 2016, DeRuiter filed a complaint, seeking a declaratory judgment that Byron Township's zoning ordinance was preempted by the MMMA and that it was, therefore, unenforceable. She took issue with the ordinance's permit requirement and locational restriction. She also sought injunctive relief to prevent Byron Township from enforcing the ordinance. Byron Township filed a counterclaim, seeking a declaratory judgment and abatement of the alleged nuisance.

The trial court granted DeRuiter's motion for summary disposition, denied Byron Township's motion for summary disposition, and dismissed Byron Township's counterclaim. The trial court held that the zoning provisions in question directly conflicted with the MMMA and that, as a result, those provisions were preempted and unenforceable. Specifically, the trial court held that Byron Township's zoning ordinance impermissibly subjected primary caregivers to penalties for the medical use of marijuana and for assisting qualifying patients with the medical use of marijuana regardless of a caregiver's compliance with the MMMA. According to the trial court, these penalties clearly conflicted with the MMMA, which prohibits penalizing qualifying patients and primary caregivers who are in compliance with the MMMA. See MCL 333.26424(a) and (b). The trial court also determined that Byron Township could not prohibit what the MMMA

5

explicitly authorized—the medical use of marijuana under MCL 333.26427(a). According to the trial court, Byron Township ran afoul of these principles by requiring that a primary caregiver obtain a permit to cultivate marijuana, placing locational restrictions on that cultivation, and subjecting caregivers to fines and penalties for noncompliance.

Byron Township appealed. The Court of Appeals affirmed the trial court in a published opinion, holding that "the trial court did not err by ruling that a direct conflict exist[s] between defendant's ordinance and the MMMA resulting in the MMMA's preemption of plaintiff's home-occupation ordinance." *DeRuiter*, 325 Mich App at 287. Byron Township filed an application for leave to appeal in this Court. We ordered oral argument on the application, directing the parties to address "whether the defendant's zoning ordinance pertaining to the location of registered medical marijuana caregivers is preempted by the [MMMA]." *DeRuiter v Byron Twp*, 503 Mich 942 (2019).

## II. STANDARDS OF REVIEW

"Whether a state statute preempts a local ordinance is a question of statutory interpretation and, therefore, a question of law that we review de novo." *Ter Beek v City of Wyoming*, 297 Mich App 446, 452; 823 NW2d 864 (2012) (*Ter Beek I*), aff'd 495 Mich 1 (2014). "We also review de novo the decision to grant or deny summary disposition and review for clear error factual findings in support of that decision." *Ter Beek v City of Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014) (*Ter Beek II*) (citations omitted).

The MMMA was enacted by voter referendum in 2008. "Statutes enacted by the Legislature are interpreted in accordance with legislative intent; similarly, statutes enacted

6

by initiative petition are interpreted in accordance with the intent of the electors."[8] *People v Mazur*, 497 Mich 302, 308; 872 NW 2d 201 (2015). "We begin with an examination of the statute's plain language, which provides 'the most reliable evidence' of the electors' intent." *Id.*, citing *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). "If the statutory language is unambiguous, . . . [n]o further judicial construction is required or permitted because we must conclude that the electors intended the meaning clearly expressed." *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012) (quotation marks and citations omitted; alteration in original).

## III.  ANALYSIS

Generally, local governments may control and regulate matters of local concern when such power is conferred by the state. *City of Taylor v Detroit Edison Co*, 475 Mich 109, 117-118; 715 NW2d 28 (2006). State law, however, may preempt a local regulation either expressly or by implication. *Mich Gun Owners, Inc v Ann Arbor Pub Sch*, 502 Mich 695, 702; 918 NW2d 756 (2018), citing *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008). Implied preemption can occur when the state has occupied the entire field of regulation in a certain area (field preemption) or when a local regulation directly conflicts with state law (conflict preemption). *Mich Gun Owners, Inc*, 502 Mich at 702. In the context of conflict preemption, a direct conflict exists when "the ordinance

---

[8] The Legislature subsequently amended the MMMA. See 2012 PA 512, effective April 1, 2013; 2012 PA 514, effective April 1, 2013; 2016 PA 283, effective December 20, 2016. Because these amendments do not concern preemption or local zoning restrictions, we are primarily concerned with the electorate's intent when determining whether a direct conflict exists between the MMMA and the Byron Township Zoning Ordinance.

permits what the statute prohibits or the ordinance prohibits what the statute permits." *People v Llewellyn*, 401 Mich 314, 322 n 4; 257 NW2d 902 (1977).

We only address whether the MMMA is in direct conflict with the township's zoning ordinance. We do not address field preemption because the trial court did not base its preemption ruling on that doctrine. See *DeRuiter*, 325 Mich App at 287 (declining to address field preemption because "the trial court never based its ruling on field preemption of zoning"). Likewise, we do not consider express preemption because DeRuiter has not argued that the MMMA expressly preempts the zoning ordinance at issue.

Conflict preemption applies if "the ordinance is in direct conflict with the state statutory scheme[.]" *Llewellyn*, 401 Mich at 322. An examination of whether the MMMA directly conflicts with the zoning ordinance must necessarily begin with an examination of both the relevant provisions of the MMMA and of the ordinance.

The MMMA affords certain protections under state law for the medical use of marijuana. MCL 333.26424. The MMMA defines the phrase "medical use of marihuana" as "the acquisition, possession, cultivation, manufacture, extraction, use, internal possession, delivery, transfer, or transportation of marihuana, marihuana-infused products, or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition." MCL 333.26423(h). The MMMA states, in pertinent part, that a qualifying patient "is not subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action . . . for the medical use of marihuana in accordance with this act[.]" MCL 333.26424(a). The MMMA also provides the same immunity to a primary caregiver in

8

"assisting a qualifying patient . . . with the medical use of marihuana in accordance with this act." MCL 333.26424(b). As a condition of immunity under either subsection, the MMMA requires a primary caregiver or qualifying patient who cultivates marijuana to keep their plants in an "enclosed, locked facility." MCL 333.26424(a); MCL 333.26424(b)(2).[9]

Both lower courts held that the zoning ordinance here directly conflicts with the MMMA because the ordinance allows Byron Township to sanction a registered primary caregiver's "medical use of marijuana" when that use occurs in a commercially zoned location. In affirming the trial court's holding, the Court of Appeals relied on our decision in *Ter Beek II*. Like the case before us, *Ter Beek II* involved a challenge to a local zoning ordinance on the basis that the ordinance was preempted by the MMMA. In that case, we were tasked with deciding whether the city of Wyoming's zoning ordinance conflicted with, and was thus preempted by, the immunity provisions of the MMMA, MCL 333.26424(a) and (b). *Ter Beek II*, 495 Mich at 19.

We said yes. The zoning ordinance in *Ter Beek II* prohibited land uses that were contrary to federal law and subjected such land uses to civil sanctions. Because the manufacture and possession of marijuana is prohibited under federal law, the Wyoming ordinance at issue in *Ter Beek II* had the effect of banning outright the medical use of

---

[9] An "enclosed, locked facility" may be a "closet, room, or other comparable, stationary, and fully enclosed area . . . ." MCL 333.26423(d). The facility may be outdoors "if [marijuana plants] are not visible to the unaided eye from an adjacent property when viewed by an individual at ground level or from a permanent structure and are grown within a stationary structure that is enclosed on all sides, except for the base," or it may be in a vehicle under certain conditions. *Id*.

9

marijuana in the city. As a result, there was no way that patients and caregivers could engage in the medical use of marijuana under the MMMA without subjecting themselves to a civil penalty.

The Byron Township ordinance is different than the ordinance we considered in *Ter Beek II*. It allows for the medical use of marijuana by a registered primary caregiver but places limitations on where the caregiver may cultivate marijuana within the township (i.e., in the caregiver's "dwelling or attached garage" as part of a regulated "home occupation"). See Byron Township Zoning Ordinance, § 3.2.H.1 and § 3.2.H.2.d. But despite the differences, DeRuiter argues that the Byron Township ordinance is in direct conflict with the MMMA because the act protects a registered caregiver from "penalty in any manner" for "assisting a qualifying patient . . . with the medical use of marihuana" so long as the caregiver abides by the MMMA's volume limitations and restricts the cultivation to an "enclosed, locked facility." See MCL 333.26424(b). The Court of Appeals agreed.

Admittedly, our preemption analysis in *Ter Beek II* considered the MMMA's prohibition on the imposition of a "penalty in any manner." *Ter Beek II*, 495 Mich at 24. But while we sided with the plaintiff in *Ter Beek II*, we cautioned that "Ter Beek does not argue, and we do not hold, that the MMMA forecloses all local regulation of marijuana[.]" *Id*. at 24 n 9.

Were we to accept DeRuiter's argument, the only allowable restriction on where medical marijuana could be cultivated would be an "enclosed, locked facility" as that term is defined by the MMMA. MCL 333.26423(d). Because the MMMA does not otherwise limit cultivation, the argument goes, any other limitation or restriction on cultivation

10

imposed by a local unit of government would be in conflict with the state law.[10]  We

disagree.  The "enclosed, locked facility" requirement in the MMMA concerns what type

of structure marijuana plants must be kept and grown in for a patient or caregiver to be

entitled to the protections offered by MCL 333.26424(a) and (b); the requirement does not

speak to *where* marijuana may be grown.  In other words, because an enclosed, locked

facility could be found in various locations on various types of property, regardless of

zoning, this requirement is not in conflict with a local regulation that limits *where* medical

marijuana must be cultivated.

This result is not at odds with *Ter Beek II*, which involved an ordinance that resulted

in a complete prohibition of the medical use of marijuana, despite the MMMA's

authorization of such use, see MCL 333.26427(a).  A local ordinance is preempted when

it bans an activity that is authorized and regulated by state law.  For example, in *Nat'l

Amusement Co v Johnson*, 270 Mich 613, 614; 259 NW 342 (1935), we considered a city

ordinance that banned a person from " 'tak[ing] part in any amusement or exhibition which

shall result in a contest to test the endurance of the participants.' "  We concluded that the

ordinance was preempted by a state statute that regulated "endurance contests" and made

it unlawful to participate in such contests "except in accordance with the provisions of this

act."  *Id*. at 615 (quotation marks omitted).  We explained:

> Where an amusement, which has been lawful and unregulated, is not
> evil *per se* but may be conducted in a good or bad manner, is the subject of

---

[10] DeRuiter argues that the MMMA permits her to cultivate medical marijuana in any enclosed, locked facility.  She does not contend that it was impossible or impractical for her to cultivate marijuana in her home in accordance with Byron Township's zoning ordinance.  Consequently, we do not address this latter possibility.

11

legislation, regulatory, not prohibitory, it would seem clear that the legislature intended to permit continuance of the amusement, subject to statutory conditions. The statute makes it unlawful to conduct a walkathon only in violation of certain conditions. This is merely a common legislative manner of saying that it is lawful to conduct it if the regulations are observed. [*Id*. at 616-617.]

We presumed that "the city may add to the conditions" in the statute but found it impermissible that "the ordinance attempt[ed] to prohibit what the statute permit[ted]." *Id*. at 617. As with the ordinance in *Nat'l Amusement*, Wyoming's ordinance in *Ter Beek II* had the effect of wholly prohibiting an activity (the medical use of marijuana) that the MMMA allows. But that does not mean that local law cannot "add to the conditions" in the MMMA. *Id*. DeRuiter's argument would result in an interpretation of the MMMA that forecloses all local regulation of marijuana—the exact outcome we cautioned against in *Ter Beek II*. See *Ter Beek II*, 495 Mich at 24 n 9. DeRuiter nevertheless emphasizes our statement that "the [Wyoming] Ordinance directly conflicts with the MMMA by permitting what the MMMA expressly prohibits—the imposition of a 'penalty in any manner' on a registered qualifying patient whose medical use of marijuana falls within the scope of § 4(a)'s immunity." *Id*. at 20. We appreciate the apparent contradiction and take this opportunity to clarify. Our analysis in *Ter Beek II*—in particular, our focus on whether the MMMA permitted the city to impose a sanction for violating the Wyoming ordinance—suggested that the MMMA's immunity language was the source of the conflict. That was true in *Ter Beek II* because the ordinance left no room whatsoever for the medical use of marijuana.

In *Ter Beek II*, the conflict giving rise to that preemption can be viewed as whether the city of Wyoming had completely prohibited the medical use of marijuana that the

12

electors intended to permit when they approved the MMMA.[11]  That view meshes with our caselaw, as indicated in our discussion of *Nat'l Amusement*.  More recently, we declined to find a conflict between state and local law when a locality enacted regulations that are not "unreasonable and inconsistent with regulations established by state law," so long as the state regulatory scheme did not occupy the field.  *Detroit v Qualls*, 434 Mich 340, 363; 454 NW2d 374 (1990) (holding that a city ordinance regulating the quantity of fireworks a retailer may store was not in conflict with a state law that limited possession to a "reasonable amount").  Similarly, in *Miller v Fabius Twp Bd*, 366 Mich 250, 255-257; 114 NW2d 205 (1962), we held that a local ordinance that prohibited powerboat racing and water skiing between the hours of 4:00 p.m. and 10:00 a.m. was not preempted by a state law that prohibited the activity " 'during the period 1 hour after sunset to 1 hour prior to sunrise.' "  In both cases, we quoted favorably the following proposition:

> The mere fact that the State, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements.  So long as there is no conflict between the two, and the requirements of the municipal bylaw are not in themselves pernicious, as being unreasonable or discriminatory, both will stand.  The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescription.  Thus, where both an ordinance and a statute are prohibitory and the only difference between them is that the ordinance goes further in its prohibition, but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what

---

[11] While this Court has stated that "[t]he MMMA does *not* create a general right for individuals to use and possess marijuana in Michigan," *People v Kolanek*, 491 Mich 382, 394; 817 NW2d 528 (2012), the act plainly evinces an intent to permit that use, under certain circumstances, by persons who have a legitimate medical need.  See MCL 333.26422 (findings and declarations).

the legislature has *expressly* licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective. Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not deemed inconsistent because of mere lack of uniformity in detail. [*Miller*, 366 Mich at 256-257, quoting 37 Am Jur, Municipal Corporations, § 165, p 790. See also *Qualls*, 434 Mich at 362, quoting 56 Am Jur 2d, Municipal Corporations, § 374, pp 408-409.]

Under this rule, an ordinance is not conflict preempted as long as its additional requirements do not contradict the requirements set forth in the statute.[12]

Plaintiff has not argued that the state's authority to regulate the medical use of marijuana is exclusive. The geographical restriction imposed by Byron Township's zoning ordinance adds to and complements the limitations imposed by the MMMA; we therefore do not believe there is a contradiction between the state law and the local ordinance. As in *Qualls* and *Miller*, the local ordinance goes further in its regulation but not in a way that is counter to the MMMA's conditional allowance on the medical use of marijuana. We therefore hold that the MMMA does not nullify a municipality's inherent authority to regulate land use under the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*,[13] so long as the municipality does not prohibit or penalize all medical marijuana

---

[12] See *Nat'l Amusement Co*, 270 Mich at 616, quoting 43 C. J., p 218 ("In order that there be a conflict between a State enactment and a municipal regulation both must contain either express or implied conditions which are inconsistent and irreconcilable with each other. Mere differences in detail do not render them conflicting. If either is silent where the other speaks, there can be no conflict between them. Where no conflict exists, both laws stand. . . . As a general rule, additional regulation to that of a State law does not constitute a conflict therewith.") (quotation marks omitted).

[13] The MZEA provides that "[a] local unit of government may provide by zoning ordinance for the regulation of land development and . . . regulate the use of land and structures . . . ." MCL 125.3201(1). Moreover, even if the "enclosed, locked facility" requirement did

cultivation, like the city of Wyoming's zoning ordinance did in *Ter Beek II*, and so long as the municipality does not impose regulations that are "unreasonable and inconsistent with regulations established by state law." *Qualls*, 434 Mich at 363. In this case, Byron Township appropriately used its authority under the MZEA to craft a zoning ordinance that does not directly conflict with the MMMA's provision requiring that marijuana be cultivated in an enclosed, locked facility.[14]

DeRuiter also argues that Byron Township's permit requirement directly conflicts with the MMMA because it impermissibly infringes her medical use of marijuana. Again, we disagree. As with the zoning ordinance's locational restriction, the permit requirement does not effectively prohibit the medical use of marijuana.[15] The MZEA allows Byron

---

concern where marijuana must be grown, this would not necessarily preclude a local governmental unit from imposing additional locational restrictions. *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 262; 566 NW2d 514 (1997) ("The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements.") (quotation marks and citations omitted).

[14] We do not decide whether Byron Township's ordinance conflicts with other aspects of the MMMA. Nor do we decide if the ordinance, which also precludes cultivating medical marijuana outside or in a structure detached from a residence, see Byron Township Zoning Ordinance, § 3.2.G.1 and § 3.2.H.2.d, has the practical consequence of prohibiting DeRuiter from cultivating the number of marijuana plants she is expressly permitted by the MMMA, see MCL 333.26426(d); MCL 333.26424(a); MCL 333.26424(b)(2).

[15] Byron Township's zoning ordinance provides that "[t]he operations of a registered primary caregiver, as a home occupation, shall be permitted only with the prior issuance of a Township permit." Byron Township Zoning Ordinance, § 3.2.H.3. Additionally, "[a] complete and accurate application shall be submitted . . . and an application fee in an amount determined by resolution of the Township Board shall be paid." Byron Township Zoning Ordinance, § 3.2.H.3.a. To obtain a permit from the township, a caregiver must demonstrate that their grow operation is located in a full-time residence and provide state identification, their MMMA registry identification card, information about the equipment

15

Township to require zoning permits and permit fees for the use of buildings and structures within its jurisdiction.[16] Accordingly, Byron Township may require primary caregivers to obtain a permit and pay a fee before they use a building or structure within the township for the cultivation of medical marijuana. We express no opinion on whether the requirements for obtaining a permit from the township are so unreasonable as to create a conflict with the MMMA because that argument has not been presented to us.

To the extent DeRuiter argues that the immunity provisions of the MMMA contribute to a blanket prohibition on local governments regulating the "medical use" of marijuana with respect to time, place, and manner of such use, *that* argument sounds in field preemption. DeRuiter made this claim in the trial court. But because the trial court and the Court of Appeals held that the ordinance was conflict preempted, neither court reached the issue.[17] Accordingly, we decline to address it at this time.

IV. CONCLUSION

We hold that Byron's Township's home-occupation zoning ordinance does not directly conflict with the MMMA. Accordingly, we reverse the Court of Appeals' holding

---

used to cultivate marijuana, and a description of the location being used to grow medical marijuana. Byron Township Zoning Ordinance, § 3.2.H.3.b. "A permit shall be granted if the application demonstrates compliance with [the] Ordinance, the MMMA and the MMMA General Rules." *Id*.

[16] The MZEA authorizes municipalities to "charge reasonable fees for zoning permits as a condition of granting authority to use . . . buildings . . . and structures . . . within a zoning district established under this act." MCL 125.3406(1).

[17] At oral argument before this Court, DeRuiter conceded that her appeal does not concern field preemption.

16

to the contrary and remand to the trial court for further proceedings consistent with this opinion.  We do not retain jurisdiction.

Richard H. Bernstein
Bridget M. McCormack
Stephen J. Markman
Brian K. Zahra
David F. Viviano
Elizabeth T. Clement
Megan K. Cavanagh