*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JANAFER LYNN MAYNARD,

Defendant-Appellant.

UNPUBLISHED
December 22, 2020

No. 348515
Jackson Circuit Court
LC No. 13-004841-FC

Before: O'BRIEN, P.J., and M. J. KELLY and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right her jury-trial convictions of five counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b).[1] The trial court sentenced defendant to consecutive terms of 30 to 80 years' imprisonment for Counts 1 and 2, and concurrent terms of 15 to 40 years' imprisonment for Counts 3, 4, and 5. We affirm defendant's convictions, but remand for the trial court to either articulate its justifications for the departure sentence and for imposing consecutive sentences, or to resentence defendant.

## I. BACKGROUND

This case arose from defendant's involvement in acts of sexual abuse that her husband, Richard Maynard, committed against their three-year-old daughter. In May 2013, defendant reported to law enforcement that she observed a rash on the victim's vagina, and that the victim had mimicked sexual acts with her toys and watched pornography. In an interview with two detectives, defendant reported that she previously observed Richard in the shower with the victim, moving the victim's vagina back and forth on his erect penis. Defendant also reported that, on three occasions, she observed Richard move his finger in and out of the victim's vagina when he changed her diaper. Additionally, defendant reported that she was aware that Richard took pictures

---

[1] The jury found defendant not guilty of two additional counts of CSC-I.

of the victim's vagina for sexual purposes. Defendant said that she also took pictures of the victim's vagina, but insisted that it was to document rashes.

During the interview, defendant also disclosed that she was involved in sexual acts with Richard and the victim. Defendant reported that, on multiple occasions, Richard rubbed his penis on the victim's chest and vagina, and put a portion of his penis into the victim's vagina. According to defendant, she would hold the victim's hands to comfort the victim while Richard held the victim's legs and penetrated the victim's vagina with his penis.

At defendant's trial, Richard confirmed that defendant observed him showering with the victim as he attempted to penetrate the victim, and that defendant participated in the sexual abuse of the victim by holding the victim's arms as he penetrated the victim's vagina. Richard also testified that defendant suggested that they include the victim in sexual acts because defendant "wanted to spice up [their] sex life." The jury found defendant guilty of five counts of CSC-I, and the trial court sentenced defendant as stated. Defendant now appeals.

## II. VOLUNTARINESS OF CONFESSION

Defendant argues that the trial court improperly admitted her statements that she made during the interview with the detectives because, under the totality of the circumstances, her statements were involuntary. We disagree.

Because defendant did not move the trial court to suppress her statements to the detectives, this issue is not preserved. *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000). This Court reviews unpreserved challenges for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*.

Initially, we note that defendant does not contest whether she was in custody or whether she was given proper *Miranda*[2] warnings. Instead, she limits her argument on appeal to whether her statements to the detectives were voluntarily made. We accordingly limit our analysis only to the issue raised by defendant on appeal.[3]

---

[2] *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[3] It would be improper for this Court to address arguments not raised by defendant on appeal. In *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959), our Supreme Court explained, "Failure to brief a question on appeal is tantamount to abandoning it." And as explained by our Supreme Court in *Michigan Gun Owners, Inc v Ann Arbor Pub Sch*, 502 Mich 695, 709-710; 918 NW2d 756 (2018):

> In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. [Quotation marks and citation omitted.]

In *Mincey v Arizona*, 437 US 385, 398; 98 S Ct 2408; 57 L Ed 2d 290 (1978), the Supreme Court of the United States explained that "*any* criminal trial use against a defendant of his involuntary statement is a denial of due process of law, even though there is ample evidence aside from the confession to support the conviction." (Quotation marks and citation omitted.) See also *People v Cipriano*, 431 Mich 315, 331; 429 NW2d 781 (1988) (explaining that "the use of an involuntary statement in a criminal trial, either for impeachment purposes or in the prosecution's case in chief, violates due process"). In *Cipriano*, 431 Mich at 333-334, the Michigan Supreme Court explained:

> The test of voluntariness should be whether, considering the totality of all the surrounding circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired. The line of demarcation is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession.
>
> In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [Quotation marks, citations, and alteration omitted.]

"The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Id*. at 334.

Viewing the totality of the circumstances of the interview, we conclude that defendant's confession was voluntarily made. Defendant agreed to be interviewed by the detectives. At the time of the interview, defendant was 36 years old and had a high school education. Nothing suggests that either defendant's age or her education level influenced her decision to be interviewed by the detectives or otherwise affected the statements that she made. In fact, the detectives explained that they attempted to tailor the interview to accommodate defendant's deficiencies: the detectives asked defendant open-ended and direct questions, and conducted the interview at a slower pace to accommodate defendant's verbal deficiencies. Additionally, defendant was not detained before the interview; she told the detectives that she did not have means to get to the interview, and the detectives accommodated defendant's request to provide transportation to the interview. Defendant was not injured, intoxicated or drugged, or in ill health when she gave her statement, nor was she deprived of food, sleep, or medical attention. Further, defendant stated that she was sexually abused by Richard, but still chose to make her statements, including statements incriminating Richard, despite any threat of harm from Richard. Although certain factors support that defendant's statements were involuntary—for instance, the detectives' questioning of defendant was somewhat prolonged (approximately six hours with four 10-20

minute breaks) and there is nothing in the record documenting that defendant had extensive experience with the police—determining whether a statement was voluntary is a multi-factor test. As stated, the ultimate query that we must resolve is "whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Id*. at 334. Considering the totality of the circumstances surrounding defendant's interview and the statements she made during the interview, we conclude that defendant's statements to the detectives were voluntarily made. Accordingly, the admission at trial of statements made by defendant during her interview was not error, let alone plain error affecting substantial rights.[4]

## III. SENTENCES

Defendant argues—and the prosecution agrees—that the trial court abused its discretion when it imposed a departure sentence and when it imposed consecutive sentences. We also agree.

This Court reviews a departure from the sentencing guidelines range for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

A sentence fulfills the principle of proportionality if it reflects the seriousness of the offense and the background of the offender, regardless of whether it departs from or adheres to the guidelines' recommended range. *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017). Nonetheless, if a trial court imposes a sentence that departs from the sentencing guidelines' range, the court must provide "adequate reasons for the extent of the departure sentence imposed." *Steanhouse*, 500 Mich at 476. Relevant factors for determining whether a departure sentence is proportionate include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight. *Dixon-Bey*, 321 Mich App at 525.

Here, the trial court's 30-year minimum sentence unquestionably departed from defendant's minimum recommended sentence. Defendant had no prior convictions, so nothing

---

[4] On appeal, defendant stresses that she was a "vulnerable" person of low intelligence who was susceptible to the interrogation techniques used by the detectives. While we are not unsympathetic to defendant's argument, our inquiry must consider the totality of the circumstances surrounding the interview. For the reasons explained, when considering all of the factors listed in *Cipriano*, 431 Mich at 334, we believe that it was not plain error to admit at trial the statements voluntarily made by defendant during her interview with the detectives.

Defendant also argues that her counsel was ineffective for not moving to suppress the statements she made during her interview with the detectives on grounds that her statements were involuntarily made. As explained above, the statements were not involuntarily made, so an objection on that ground would have been meritless, and counsel was not ineffective for not raising the objection. See *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011).

about defendant's background supported a departure sentence. In explaining its sentence, the trial court focused on the nature of defendant's offense, stating that this was "probably the most disturbing case I've—I've ever had to sit and preside over as a Judge." The trial court then reiterated facts of the case: that defendant assisted Richard in the sexual acts towards the victim, did not report Richard's sexual abuse of the victim, and engaged in the sexual abuse of the victim for approximately six months. Many of the things that the trial court talked about, however, were considered by the guidelines. For instance, OV 10 contemplated the victim's youth and the abuse of defendant's authority status as the victim's parent, MCL 777.40(1)(b), and OV 11 and OV 13 considered that two or more criminal sexual penetrations occurred and that defendant's conduct was a part of a pattern of felonious criminal activity involving three or more sexual penetrations, MCL 777.41(1)(a); MCL 777.43(2)(d). Moreover, the trial court appeared to acknowledge that defendant's recommended sentence reflected the seriousness of a CSC-I offense, stating that the "[l]aw is tough on Criminal Sexual Conduct in the first degree." Lastly, when the trial court imposed the sentence, it did not acknowledge that defendant's sentence departed from the sentencing guidelines, and consequently "gave no explanation for the extent of the departure," which it was required to do. *People v Smith*, 482 Mich 292, 305-306; 754 NW2d 284 (2008). Accordingly, the trial court did not adequately justify the departure sentence it imposed. On remand, the trial court must either articulate its reasons for the departure sentence or resentence defendant.

When sentencing defendant, the trial court also ordered that defendant's departure sentences run consecutive to one another. In Michigan, concurrent sentencing is the norm, and a trial court may not impose a consecutive sentence unless authorized by the Legislature. See *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012). In MCL 750.520b(3), the Legislature expressly authorized trial courts to impose consecutive sentences for CSC-I convictions, so the trial court was authorized to impose consecutive sentences in this case. When a trial court imposes authorized consecutive sentences, it must articulate its rationale for the consecutive sentences in order to facilitate appellate review. See *People v Norfleet*, 317 Mich App 649, 664-665; 897 NW2d 195 (2016).

The trial court here gave no explanation for why it imposed consecutive sentences, which precludes this Court from reviewing whether consecutive sentencing was proper. See *id.* See also *People v Broden*, 428 Mich 343, 350-351; 408 NW2d 789 (1987) (explaining that a sentencing court must "articulate on the record its reasons for imposing the sentence given" in order to allow appellate courts to review the sentence). We therefore remand for the trial court to either articulate its rationale for imposing consecutive sentences or to resentence defendant.[5]

---

[5] Defendant also argues that her trial counsel was ineffective for not providing mitigating evidence at the sentencing hearing. To establish ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). In *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019), this Court explained that "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing." Because trial courts

Affirmed in part, but remanded for the trial court to either articulate its justifications for the departure sentence and for imposing consecutive sentences, or to resentence defendant. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ James Robert Redford

---

are not required to consider mitigating factors at sentencing, it was not objectively unreasonable for defense counsel to not provide such evidence to the trial court at sentencing. Moreover, the mitigating evidence that defendant refers to in her appellate brief was presented during defendant's trial and in her presentence investigation report, and it is unclear how defendant's trial counsel's decision to not repeat this evidence at her sentencing hearing, even if objectively unreasonable, would have probably changed the outcome at sentencing.